No. 85-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

FRANK GEORGE KESTNER, JR.,

Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Sherlock & Nardi; Patrick D. Sherlock argued,
Kalispell, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Patricia Schaeffer argued, Asst. Atty. General, Helena
Ted O. Lympus, County Attorney, Kalispell, Montana

Submitted:   December 4, 1985

Decided:   January 27, 1986

Filed:    JAN 27 1986

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant Frank Kestner, Jr. appeals his November 1, 1984, jury conviction in the District Court of the Eleventh Judicial District on two counts of sexual assault. We reverse and remand for a new trial.

On January 14, 1984, defendant exercised at Second Wind Rec Center in Kalispell, Montana, where he was a member. About 7:00 p.m., defendant went to the pool area to swim laps and soak in the hot tub. Among numerous others in the pool area were S. M. (Count I) and C. B. (Count II), both age 12, and M. N. (Count III) and R. L. (Count IV), both age 15.

After swimming for a while, S. M. and C. B. went to soak in the hot tub. Defendant and several others were already in the tub, which was 6'4" in diameter and could hold up to 12 people. S. M. sat next to defendant, with C. B. next to her. Both S. M. and C. B. testified that defendant was staring at them with "weird" eyes. S. M. felt a hand on her inner thigh, which she believed to be defendant's, so she jumped out of the hot tub. S. M. having left, defendant and C. B. were now seated next to each other. C. B. testified she then felt something rubbing her inner thigh near the elastic of her swim suit. At first she thought it was bubbles from the water jets, but then realized it was the hand of defendant, so she jumped out, ran over to S. M. and they both jumped in the swimming pool. S. M. and C. B. testified that defendant was the only one close enough to have touched them in such a manner.

Defendant testified the only touching of either of these girls that he recalls was putting his hand momentarily on C. B.'s back to get her attention in order to strike up a conversation. She then jumped from the tub. Defendant got

2

out of the hot tub shortly thereafter and went over by the shallow end of the pool. He saw C. B. and S. M. in the pool, jumped in and from a distance of a few feet told C. B. she was exceptionally beautiful. Defendant had recently been doing sketches and drawings, and testified that he was interested in C. B.'s beauty from an artistic standpoint.

A little while later, as defendant was floating in the hot tub with his legs outstretched, M. N. entered the tub, and not seeing defendant's legs, she tripped and fell onto him. M. N. testified that in the process of helping her up, defendant touched her buttocks and breasts. Defendant testified that he was not aware he had touched her in those areas, but if he had it was certainly unintentional. M. N. sat next to defendant and felt a hand on her thigh, with fingers rubbing her in the vaginal area. She moved away from defendant, and then R. L. entered the pool, also tripping over defendant's legs. R. L. testified that defendant touched her on the breast as she got up, and that upon sitting next to him, she felt defendant's hand on her inner thigh with his fingers rubbing her vaginal area. R. L. grabbed M. N. and they jumped out of the hot tub. Defendant denied having any contact with R. L., except to help her up when she fell.

M. N. and R. L. jumped into the pool, where a short time later they saw defendant swimming towards them, so they jumped out quickly and went back to the hot tub. In the hot tub, M. N. and R. L. overheard S. M. and C. B. discussing a similar incident, so they all went into the dressing room for further discussion. The girls decided to tell the clerk at the front desk about the incidents. As they were attempting to do this, defendant came to the desk to checkout. At the same time, one of the girls' mother came in, and upon finding

3

out what had happened, threatened defendant. Defendant, thereupon left the rec center. The desk clerk informed the girls that defendant had been a regular for some time, and that their accusations were false. Sometime during the ensuing week, C. B.'s mother phoned the police and reported what had allegedly happened that night.

On January 26, 1984, Officer Don Hossack of the Kalispell Police Department obtained statements from S. M. and C. B. about the alleged incidents. A formal complaint alleging two counts of sexual assault was filed February 3, 1984. The last names of M. N. and R. L. were not obtained until later and their statements were taken February 3, 1984; two additional counts of sexual assault were filed against defendant on February 15, 1984.

The trial was held October 30 and 31, 1984. Eight witnesses testified at trial: the victims, M.N.'s mother, Officer Hossack, defendant, and defendant's wife. The jury returned a verdict of guilty on counts II and IV (C. B. and R. L.), and not guilty on counts I and III (S. M. and M. N.). Defendant was sentenced to three years on count II, and five years on count IV, with four years of the five year sentence suspended.

On appeal, defendant raises five issues; we find the issues can be consolidated as follows:

(1) Whether the District Court erred in not granting the defendant separate trials on each of the counts, or in the alternative, consolidating all of the counts into one charge.

(2) Whether there was sufficient evidence to send the case to the jury and support a verdict of guilty on two counts.

(3) Whether the District Court erred in instructing the jury concerning the definition of sexual assault.

4

Defense counsel filed a motion to consolidate all four counts into one count, or in the alternative to allow separate trials on each count.

Section 46-11-404(2), MCA, provides:

> (2) The court in which the case is triable, in the interests of justice and for good cause shown, may in its discretion, order that the different offenses or counts set forth in the indictment, information, or complaint be tried separately or divided into two or more groups and each of the groups tried separately. An acquittal of one or more counts shall not be considered an acquittal of any other count.

Section 46-11-404(4), MCA provides:

> (4) If it appears that a defendant or the state is prejudiced by enjoinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial, the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require.

The district judge denied the motion to grant separate trials for each count, finding that judicial economy favored a single trial and that defendant had made no showing of prejudice by the joinder of all counts for trial. A reading of the record supports the district judge's ruling and reveals no showing of prejudice by defendant. In State v. Phelps (Mont. 1985), 696 P.2d 447, 42 St.Rep. 305, this Court upheld the district court's ruling that two separate charges of deviate sexual conduct should be tried in one trial:

> . . . We find no prejudice to defendant that outweighs considerations of judicial economy. Additionally, the State argues persuasively that the effect of two separate trials on the young victims of these crimes should be considered. Each would potentially be a witness in both trials and be compelled to appear and testify twice.

696 P.2d at 454, 42 St.Rep. at 313.

We find the Phelps rationale to be especially persuasive in the present case where there were four young victims.

5

The district judge also denied defendant's motion to consolidate the four counts into one count, and stated that "would be tantamount to the outright dismissal of three (3) such counts." A reading of §§ 46-11-404(2) and (4), MCA, shows the trial judge is granted discretion in whether to consolidate counts or order separate trials. There has been no showing the trial judge abused his discretion, nor that defendant suffered prejudice. Had the counts been separately tried defendant would have risked introduction of the other charges as similar acts or similar crimes evidence.

Defendant asserts there was insufficient evidence to send the case to the jury and to support a guilty verdict on two of the counts. We disagree. At the close of the State's case, defense counsel moved that the charges be dismissed for the following reasons: (1) there were others in the hot tub who could have touched the girls; (2) the girls did not see defendant's hand on their thighs or vaginal areas; and (3) the State did not show defendant knowingly assaulted these girls to satisfy his sexual desires. The district judge denied the motion. We find substantial evidence in the record to uphold the district judge's decision to send the case to the jury.

C. B. and R. L. testified that only defendant was near enough to touch them while in the hot tub, and although they couldn't see defendant's hands, they knew it was his hand touching them in the water. Defendant admitted that M. N. and R. L. tripped and fell onto him, and that he patted C. B. on the back and later told her she was exceptionally beautiful. C. B. and R. L. both testified defendant rubbed them on or near the vaginal area.

The testimony of the girls is substantial evidence creating a jury issue. Credibility of defendant and the

6

girls was for the jury to decide. A directed verdict or motion to dismiss should only be granted where there is no substantial evidence on which a jury could base a conviction. State v. Doney (Mont. 1981), 636 P.2d 1377, 1381, 38 St.Rep. 1707, 1711.

Defendant also argues the State presented no evidence that he knowingly assaulted the girls to satisfy his sexual desires. We agree with the State that the girls' testimony is substantial evidence from which to infer defendant's intent. Intent is a fact question for the jury, and it is well-settled that the jury may infer intent from defendant's acts. State v. Jackson (1979), 180 Mont. 195, 205, 589 P.2d 1009, 1015.

Finally, defendant asserts the District Court erred in instructing the jury concerning the definition of sexual assault. Specifically, defendant argues jury instruction no. 11, taken from State v. Weese (Mont. 1980), 616 P.2d 371, 37 St.Rep. 1620, gives an overly broad meaning to the sexual assault statute, § 45-5-502, MCA. Instruction no. 11 given to the jury reads as follows:

> The term "sexual or other intimate parts of another" is intended to be given broad application and is not intended to restrict the crime to a touching of the genitalia or female breast and includes intimate impositions upon the victim. [Instruction No. 11; State v. Weese.]

The trial transcript shows that defense counsel objected to this instruction, and argued that the Weese instruction did not apply to the facts of this case.

In Weese, the defendant rubbed the chest and belly of a 9 year old girl, and offered her money so that he could continue. The district judge found no evidence of sexual contact and dismissed the sexual assault charge. This Court reversed the dismissal and found the defendant's conduct

7

amounted to prohibited sexual contact. In discussing §
45-5-502(1), MCA, we said:

> It appears to us that the policy behind
> our sexual assault statute is to
> criminalize and punish sexual or intimate
> impositions that do not involve
> penetration /cf. section 45-5-503 (sexual
> intercourse without consent) and 45-5-505
> (deviate sexual conduct)/; but which
> express a societal concern for such
> impositions because they provoke outrage,
> disgust or shame in the victim. The
> enhanced punishment for this offense when
> committed on a victim less than 16 years
> old by an offender 3 or more years older
> indicates an increased legislative
> concern for child victims.
>
> The Commission Comment to the sexual
> assault statute bears out this
> legislative purpose. To like effect, see
> Model Penal Code, section 207.6,
> Comments.
>
> Use of the terms "sexual or other
> intimate parts" indicates that the
> legislature did not intend or restrict
> the crime to touching of the genitalia of
> either sex or a touching of a female's
> breast, but instead intended to give the
> terms a broader application. In keeping
> with the focus of sexual assault statutes
> on the outrage, disgust or shame
> engendered in the victim, other courts
> have held that the term "intimate parts"
> in such statutes include the buttocks (In
> the Matter of David M. (1978), 93 Misc.2d
> 545, 403 NYS2d 178), the hips (Matter of
> Welfare of Adams (1979), 24 Wash.App.
> 517, 601 P.2d 995), and the prepubsecent
> chest of a 7-year old girl (State v.
> Turner (1978), 33 Or.App. 157, 575 P.2d
> 1007).
>
> In view of the purpose of the statute and
> interpretations by other courts of the
> term "sexual or other intimate parts" in
> similar statutes, we construe the rubbing
> of the belly and chest of a 9-year old
> girl by an adult male for the purpose of
> gratifying his sexual desires as
> prohibited sexual contact within the
> meaning of the statute. Here the fact
> that defendant lifted the girl's shirt to
> make the contact and offered her money to
> be allowed to continue is evidence that
> his purpose was gratification of his
> sexual desires.

616 P.2d at 373, 374, 37 St.Rep. at 1622, 1623.

The holding of Weese is that touching is not limited to "sexual parts" and under the facts of the case a jury issue was created under the statute. The court's language utilizing the phrase intimate imposition is far too broad for a jury instruction. "Intimate imposition" can be construed to encompass staring, or the touching of another's knee or shoulder; the term shifts the focus from the defendant's conduct to the sensitivity of the victim. Accordingly, if it is unclear what type of contact constitutes sexual assault, it becomes exceedingly difficult to determine whether a defendant had any sexual intent underlying the contact.

Instruction no. 10 gave the definition of sexual contact under § 45-2-101(60), MCA:

> Sexual contact means any touching of the sexual or other intimate parts of the person of another, for the purpose of arousing or gratifying the sexual desire of either party.

We find this statutory statement of what constitutes sexual contact to be adequate without embellishment. Under the facts of this case, including testimony that defendant had touched the breasts, buttocks, and vaginal areas of the victims, there was a jury issue under the statute. However understandable the District Court's action in borrowing from the Weese opinion, we cannot allow the conviction to stand under an instruction that could punish innocent conduct. Here the jury could have found an "intimate imposition" for sexual arousal if they believed only the acts described by the defendant took place. The instruction is overbroad and requires a new trial.

We do not overrule Weese. Under the facts of Weese and the facts of this case a jury issue was created under

9

§ 45-2-101(60), MCA. However, nothing broader than the statute itself should be given as an instruction.

We reverse the judgment of the District Court and remand for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices