No. 90-342

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

MARVIN McLAIN,

       Defendant and Appellant.

RECEIVED

JUL 18 1991

ED SMITH
Clerk of Supreme Court
State of Montana

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         Hon. Marc Racicot, Attorney General, State of
Montana, Helena, Montana; John Paulson, Assistant
Attorney General, State of Montana, Helena, Montana;
Larry J. Nistler, Lake County Attorney, Polson,
Montana; Robert S. Anderson, Deputy County Attorney,
Polson, Montana.

     For Respondent:

         Rebecca T. Dupuis, Polson, Montana.

Submitted on briefs:  May 24, 1991

Decided:  July 16, 1991

FILED

Filed:

JUL 16 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Marvin McLain appeals from a jury verdict finding him guilty of sexual assault in violation of § 45-5-502, MCA. The District Court of the Twentieth Judicial District, Lake County, sentenced McLain to a term of twenty years with five years suspended. We affirm.

The issues submitted for review are:

1) Whether the defendant was denied his constitutional right to effective assistance of counsel;

2) Whether the District Court erred by allowing expert testimony that the victim was credible in her reporting of the sexual assault;

3) Whether there was sufficient evidence to support the conviction.

In August of 1989, nine year old D.L. lived with her mother at the Schultz Trailer Court in Pablo, Montana. The defendant, Marvin McLain (McLain) lived with his two children in a nearby trailer. Apparently, D.L. and McLain's children were playmates. McLain's children's names are Amy, who was nine years old at the time, and Jonathan, who was five years old.

On the morning of August 22, 1989, D.L.'s mother went to work at a local discount store. D.L. was left in the care of two house guests who were staying with D.L. and her mother. As usual, D.L. played all day long with Amy and Jonathan.

McLain had just gotten off of work from the saw mill where he

worked the graveyard shift. He rested on his couch throughout the day while the children played. In the early evening hours the children began to bake sugar cookies at the McLain trailer. While the cookies were in the oven, the children began to have a pillow fight. According to D.L., McLain joined in the fight and began tickling and wrestling with the children. When Amy left momentarily to check on the cookies, D.L. was on the living room floor on her hands and knees. McLain was on top of her, also on his hands and knees. At this point McLain began touching D.L. on her right breast. The "touching" continued and he squeezed her breast several times and then touched her between her legs.

Later that evening, D.L.'s mother noticed that her daughter appeared very upset. D.L. asked to sleep in her mother's bed and after being tucked in told her mother about the sexual assault perpetrated by McLain. D.L.'s mother then called the police and reported the incident.

After D.L. was interviewed by a state social worker, McLain was arrested and charged by information with sexual assault. The witnesses listed in the information included an "unknown" person from the Ronan Mental Health Clinic. Dr. Edward Trontel of Kalispell was then asked, by the state, to interview D.L. for the purpose of determining whether she was capable of making a credible report. On February 1, 1990, the State filed a motion seeking to substitute Dr. Trontel for the "unknown" witness. Defense did not object and this motion was granted.

Trial commenced on February 22, 1990. At trial D.L. testified

3

and related the story as set out above. McLain, for his part, denied touching D.L.'s breasts or vaginal area. He testified that he remembered the pillow fight but did not participate in it. He further testified that he caught Amy and D.L. smoking his cigarettes on that day and that he had informed D.L. that he was going to tell her mother. Amy was called as a rebuttal witness. She testified that she and D.L. had not gotten caught or gotten into any trouble for smoking cigarettes. She further testified that she saw her father touch D.L. between the legs.

Following trial, the jury returned a verdict of guilty as to the offense of sexual assault. On March 14, 1990, sentence was imposed and the judgment of the court rendered. This appeal followed.

I

McLain maintains that he was not afforded his right to effective assistance of counsel and that his rights under the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution were therefore violated. He asserts two deficiencies in his attorney's performance: (1) that counsel failed to object to the State's motion to substitute Dr. Trontel as a witness, and (2) that counsel failed to interview Dr. Trontel prior to trial.

The standard for reviewing claims of ineffective assistance of counsel is well established. In evaluating such claims, this Court applies the two prong test set forth in Stickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.

4

This test requires that a criminal defendant show (1) that his attorney's performance was deficient and (2) that counsel's deficient performance prejudiced the defense to a degree which denied the defendant a fair trial. State v. Boyer (1985), 215 Mont. 143, 695 P.2d 829. This test places a heavy burden upon a defendant who seeks to reverse a judgment on such grounds. Under Strickland, judicial scrutiny of counsel's performance must be highly deferential and the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689.

Failure to object to the adding of a name to the list of witnesses three weeks before trial under this circumstance is not deficient. Moreover, even if we assume that counsel's performance was deficient when he failed to interview Dr. Trontel, it is by no means apparent that these deficiencies prejudiced McLain's right to a fair trial. In order to prevail on this issue, McLain must show that a reasonable probability exists that but for his counsel's deficient performance, the trial's outcome would have been different. In light of the overwhelming evidence against him, McLain cannot make this showing.

Both D.L. and McLain's daughter testified that he sexually assaulted D.L. Admittedly, D.L.'s testimony contained some discrepancies. The discrepancies mostly dealt with small details such as how many times he touched her or which hand he used when he fondled her breast. The inaccuracies contained in these statements do not weaken her testimony. On the whole the evidence

5

presented against the defendant was overwhelming and, therefore, any failure to interview by McLain's counsel concerning Dr. Trontel's testimony could not have contributed to his conviction. There is no showing that Dr. Trontel's testimony was a surprise or not anticipated.

## II

Defendant next argues that the District Court erred when it allowed Dr. Trontel to testify about whether D.L. was credible in her reporting of this event. Previously, we have held that expert testimony is admissible for the purpose of helping the jury to assess the credibility of a child sexual assault victim. Generally, such testimony is admissible when the child testifies at trial and the child's credibility is brought into question. See State v. Harris (1991), 808 P.2d 453, 48 St.Rep. 62; State v. Geyman (1986), 224 Mont. 194, 729 P.2d 475; State v. French (1988), 233 Mont. 364, 760 P.2d 86.

In the case now before us, both of these factors are present. As stated earlier, D.L., a nine year old, testified at McLain's trial. During trial, McLain's counsel tried to impeach her testimony by setting forth inconsistencies between her testimony and earlier statements made to investigators, psychologists and lawyers. Dr. Trontel, in his testimony, explained the reasons why such inconsistencies often occur in the context of child sexual abuse. He also gave some guidance which would help the lay jurors understand and judge D.L.'s testimony. His explanation and his testimony were given in accordance with the rules set down in

6

<u>Harris</u>. We therefore find no reversible error on this issue.

III

McLain maintains that the evidence presented at trial was insufficient to support his conviction for sexual assault. His argument is based upon the inconsistencies in the evidence and the State's failure to show that his touching of the victim was for his sexual gratification.

In reviewing these types of questions, this Court has followed the rule set forth in Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. This rule requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Wilson (1981), ___ Mont. ___, 631 P.2d 1273.

In this case, McLain argues that the evidence presented by the State was so inconsistent that no rational jury could have found him guilty. We disagree. As stated earlier, the alleged inconsistencies are inconsequential. They dealt with only small details of a stressful occurrence that involved a very young girl. There was no discrepancy involving any of the major aspects of the occurrence. In general D.L.'s testimony was consistent and believable. Furthermore it was supported, without any significant differences, by McLain's daughter Amy.

McLain further contends that the evidence is not sufficient to support a finding that the touching of D.L. was for his sexual gratification. In State v. Gilpen (1988), 232 Mont. 56, 756 P.2d

7

445, we held that a defendant's intent to gratify his sexual desire could be inferred from his conduct. Given the testimony that McLain pinched and stroked D.L.'s private areas several times, the jury's inference of his intent was reasonable. Furthermore, there was testimony that McLain told D.L. not to tell her mother about his physical contact with her. This evidence lends further support to the jury's verdict.

 Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8