JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Michelle Lee Herd appeals a sentencing condition imposed in the District Court Judgment which followed her plea of guilty to four counts of negligent homicide. We reverse and remand.
ISSUE
¶2 Did the District Court err when it ordered, as a condition of her sentence for negligent homicide, that Herd be barred from driving for forty years?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On December 27,2000, Herd was living near Seattle, Washington, when she received an emergency phone call from her father. He said her mother had suffered a stroke and would probably not live more than 48 hours. Herd and her sister departed around 9:30 that evening, driving Herd’s Dodge Ram half-ton pickup truck toward Great Falls with urgency.
¶4 Herd drove through the night, traveling east on Interstate 90. In Idaho, she pulled over and slept for about two and a half hours. In Missoula, she and her sister exited the vehicle, stretched and purchased espresso drinks. Herd continued driving and exited onto Highway 200 at Bonner at about 9:00 a.m. on December 28.
¶5 Highway 200 has one lane of travel in each direction. Shortly past Bonner, Herd pulled into the westbound lane to pass another *492 eastbound vehicle, and neglected to return to the eastbound lane after completing the pass. Coming around a curve about 15 miles after she had entered Highway 200, Herd met with a westbound 1968 Volkswagen Beetle driven by Arundel Good, with her mother Stacy, her sister Kilty, and her brother Marcus, as passengers. Both vehicles swerved in an unsuceessftil attempt to avoid a collision. They hit head-on and the Volkswagen caught fire. Its four occupants died. Herd and her sister suffered minor injuries.
¶6 Herd admitted that she had only slept two and a half hours out of the previous twenty-seven. She stated that, being accustomed to multi-lane highways, and having just exited a four-lane highway, she had gotten confused and did not realize she was in an oncoming lane of travel until she saw the approaching Volkswagen.
¶7 Herd was charged with four counts of Negligent Homicide pursuant to § 45-5-104, MCA (1999). She eventually pled guilty to the charges, pursuant to a Plea Agreement with the Missoula County Attorney’s Office.
¶8 In the Plea Agreement, the State agreed to make several sentencing recommendations, including that Herd be given a twenty-year suspended sentence, and that she be barred from driving for five years, except in a bona fide emergency. At Herd’s sentencing on February 25, 2002, the Deputy County Attorney made no specific recommendations outside of the terms set forth in the Plea Agreement. Two members of the Good family testified, and both recommended that her driving privileges be terminated.
¶9 At the sentencing and in its written Judgment entered April 26, 2002, the District Court sentenced Herd to concurrent twenty-year sentences on Counts I and II and concurrent twenty-year sentences on Counts III and IV, all suspended, with the two sets of concurrent sentences to be served consecutively. The District Court ordered Herd to enter and successfully complete a pre-release program; to remain under the jurisdiction of the Adult Parole and Probation Bureau for the forty-year term; to pay $200 per month in restitution for the twenty-year term of Counts I and II; to not own or be in control of any firearms or deadly weapons for the next forty years; to not enter any bars or casinos for the next forty years; to not drink or possess alcoholic beverages for forty years; to obtain any counseling requested by her Probation Officer; and to submit to drug and alcohol testing at any time her Probation Officer has reasonable grounds to believe the test would disclose evidence of a probation violation. The District Court also ruled that Herd would be barred from driving during the *493 entire forty-year term of the sentences. The District Court explained that it set the sentences to run consecutively specifically to prohibit Herd from driving for forty years.
¶ 10 Herd filed a motion for reconsideration regarding the length of the driving restriction, which was denied. She now timely appeals the driving restriction to this Court.
STANDARD OF REVIEW
f 11 In State v. Montoya, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15, we held that our standard of review of criminal sentences was properly confined to legality only. We noted that our previous standard of review-which was a two-tiered approach under which we reviewed sentences for both legality and abuse of discretion-was a “carry-over from the days when this Court reviewed all sentencing challenges, prior to the creation of the Sentence Review Division” (SRD). Id. Recently, we rejected a constitutional challenge to the statute limiting SRD review, thereby leaving some sentences unreviewable for severity. State ex rel. Holt v. District Court, 2000 MT 142, 300 Mont. 35, 3 P.3d 608. As will be discussed below, we feel it is necessary at this time to identify and clarify the standard of review for those cases in which the appellant is not eligible for SRD.
DISCUSSION
¶12 Did the District Court err when it ordered, as a condition of her sentence, that Herd be barred from driving for forty years?
¶13 When deferring imposition of sentence or suspending all or a portion of a sentence, district courts may impose reasonable restrictions or conditions on the offender. Section 46-18-201(4), MCA (1999). However, these restrictions and conditions must be reasonably related to the objectives of rehabilitation and the protection of the victim and society. Section 46-18-202(l)(f), MCA (1999).
¶14 The District Court specifically found that Herd was a good prospect for rehabilitation. It also found that she had led a law-abiding life for a substantial period before the collision, and that she was not likely to commit another crime. Nonetheless, the District Court concluded that Herd should be barred from driving for forty years.
¶15 Herd argues that the District Court was unreasonable in pi'ohibiting her from driving for the majority of her remaining life expectancy. She points out that, while the District Court states she has a good chance at rehabilitation if she follows through on the Judgment, she has no meaningful chance at rehabilitation if she can never drive *494 again. The State argues that Herd may seek relief in this Court from an illegal sentence only, per the standard of review set forth in Montoya, and that this Court should decline to address issues of equity, as the reasonableness of a sentence is an inquiry within the purview of SRD.
¶16 The problem is that Herd is ineligible for sentence review before SRD. Pursuant to § 46-18-903, MCA (1999), any person sentenced to one year or more in the state prison may apply to SRD for review of that sentence. The jurisdiction of SRD thus extends only to those persons who are actually incarcerated, and does not extend to those persons given suspended sentences. Holt, ¶ 8. Because Herd’s sentence was suspended, she does not meet the threshold SRD eligibility requirement. As a result, if we apply Montoya strictly, the reasonableness of the driving condition imposed upon Herd will not be subject to review by either SRD or this Court. As was pointed out in the dissent in Holt, a person in this situation may well be subjected to unreviewable conditions of sentence which are overly burdensome or harsh. Holt, ¶ 22.
¶17 In other cases, we have held that a condition of sentence must have a nexus with the conviction in order for it to be a legal condition of sentence. State v. Smith, 2001 MT 111, ¶ 14, 305 Mont. 298, ¶ 14, 27 P.3d 39, ¶ 14, overruled on other grounds, (no nexus between a felony theft conviction and parenting classes as a sentencing condition); State v. Watson, 2001 MT 143, ¶ 14, 306 Mont. 33, ¶ 14, 29 P.3d 1026 , ¶ 14 (no nexus between a conviction for assaulting a peace officer and a sentencing condition prohibiting socializing with females under age 19). See also State v. Ommundson, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11. Herd concedes that there is a nexus between her sentencing condition and the underlying offense of negligent homicide which resulted from her lack of care while driving. She asks this Court to determine whether a condition of sentence can bear a relationship to the underlying offense, yet exceed reasonableness in its harshness or duration.
¶18 District Courts are afforded broad discretion in criminal sentencing. State v. Flanagan, 2003 MT 123, ¶ 23, 316 Mont. 1, ¶ 23, 68 P.3d 796, ¶ 23. However, that discretion is not without limitation. To hold that we will not review any sentence beyond legality-including those sentences which by their very nature are ineligible for review by SRD-would be to leave any sentencing condition which bore an arguable nexus with the offense for which the defendant was committed beyond review if the offender is ineligible for SRD. We turn *495 to our reasoning in Montoya, in which we discarded the two-tiered standard of review for criminal sentences, to determine if such a vacuum was ever intended or even contemplated.
¶19 In Montoya, we determined that, with the creation of SRD, it was inappropriate for this Court to review sentences for abuse of discretion, as equitableness, or severity, of a sentence was a matter for sentence review by the SRB. Montoya, ¶¶ 14-15. We did not, however, give any consideration in Montoya to those cases which would, by statutory directive, fall outside of SRD review. It was only later, when we examined the parameters of SRD’s jurisdiction in Holt, that we observed that legislatively, SRD was restricted to review of sentences which included at least one year of actual incarceration. Holt, ¶ 8.
¶20 In Montoya, we stated, “Questions of the equity of a sentence fall under the purview of the Sentence Review Division, while this Court’s review of a sentence is limited to questions of legality.” Montoya, ¶ 12. We further explained that the use of an abuse of discretion standard was a “carry-over from the days when this Court reviewed all sentencing challenges, prior to the creation of [SRD].” Montoya, ¶ 15. We did not, at that time, have a reason to consider whether or not § 46-18-901(2), MCA, limited an offender’s access to SRD because Montoya was sentenced to more than one year of actual incarceration.
¶21 It was not until Holt was decided, one year after Montoya, that it came to our attention that SRD was rejecting review of a class of felony sentences. Upon examination of the language of § 46-18-903(1), we confirmed that SRD, indeed, was given authority by the legislature to review only those sentences which consisted of a year or more of actual incarceration. Holt, ¶ 8. The Holt holding remains consistent with our reading of § 46-18-901(3). The statutory jurisdiction of SRD remains as set forth by the legislature in Title 46, Chapter 18 of the Montana Code Annotated. “Any person sentenced to a term of 1 year or more in the state prison ...” may apply for review of the sentence by SRD. Section 46-18-903(1), MCA (2001).
¶22 Nothing in Montoya suggests that it was our intent, in fashioning a “legality only” standard of review once SRD came into being, to leave those with unreasonable sentencing conditions but no term of incarceration without any remedy. Accordingly, we now take this opportunity to close this “no review” window by adopting a new hybrid standard of review for sentencing. Henceforth, if an offender is eligible for Sentence Review-in other words, if the offender is sentenced to one year or more of actual incarceration-this Court will continue to follow the standard as set forth in Montoya and review *496 such a sentence for legality only. It will be left in these cases to SRD to review sentences for equity. However, if an offender is statutorily ineligible for SRD, then this Court will utilize the two-tiered approach which we employed prior to the creation of SRD. Upon request, we will review such sentences for both legality and abuse of discretion.
¶23 We note that while Montoya overruled the previous two-tiered standard of review for sentencing, this Court has been inconsistent in the application of Montoya’s "legality only” standard. See, for example, State v. Clark, 2000 MT 40, 298 Mont. 300, 997 P.2d 107, which used the two-tiered standard of review without distinguishment. We clarify here that we will limit the use of the two-tiered standard of review to only those cases, like Herd’s, in which the offender is ineligible to have SRD review the sentence for equity.
¶24 We next apply this hybrid standard of review to Herd’s appeal from the forty-year driving prohibition which the District Court imposed as one condition of her suspended sentence. First, we review her sentence for legality, or, in other words, to determine if it falls within the parameters of the statute. Montoya, ¶ 15. Herd does not claim that the sentence imposed by the District Court falls outside of the statutory parameters. She argues rather that the length of the driving suspension, while not explicitly forbidden by statute, is so excessive as to reach a level of unreasonableness. We agree that the District Court has the authority to impose a sentence which subjects Herd to court oversight for forty years. Significantly, the District Court’s imposition of a forty-year probationary term has not even been challenged by Herd.
¶25 Next, we examine whether the District Court abused its discretion in imposing a forty-year driving ban upon Herd, under the facts of the case and in light of the District Court’s findings as set forth in ¶14. We conclude that it. did. The District Court’s findings concerning the tragic circumstances under which this accident occurred, Herd’s good prospects for rehabilitation, and her law-abiding life, are simply irreconcilable with the imposition of a forty-year driving prohibition. This prohibition drastically inhibits Herd’s ability to make a living, serve the needs of her family, and pay court-ordered restitution, thus impairing the very prospects for rehabilitation that the court noted as a factor in Herd’s favor. Moreover, there is simply nothing in the record or the District Court’s sentencing Order to suggest that such a prohibition was necessary for the protection of a victim or society as a whole. We therefore conclude that the District Court abused the discretion afforded it under § 46-18-202(1), MCA, *497 when it imposed this lengthy restriction on Herd’s ability to lawfully drive a motor vehicle.
¶26 The dissent suggests that, given the gravity of the consequences resulting from Herd’s negligence, lack of incarceration alone is enough to make her sentencing conditions equitable, if not, in fact, a gift. Dissent, ¶ 36. To read the dissent, one would think that Herd had been given but one significant sentencing condition. In reality, the District Court imposed an extensive and onerous list of sentencing conditions, see Supra, ¶ 9, which will have a tremendous impact upon Herd’s freedom and quality of life for the next forty years. Moreover, she faces the risk of a lengthy prison sentence should she violate any of these conditions. Notably, Herd does not challenge the imposition of any of these other sentencing conditions.
¶27 While the dissent argues that Herd’s driving prohibition will not prevent her “from having a full and productive life,” Dissent, ¶ 38, Herd argues, and we agree, that taking away her driving privileges for forty years is counter-productive to her rehabilitation. Herd will have precious little opportunity to improve her station, or for that matter to pay restitution, when she is precluded from driving from her remote home to any prospective place of employment, or to any of the events in which her children are involved as they grow up.
CONCLUSION
¶28 For the foregoing reasons, we reverse the condition of Herd’s sentence which prohibits her from legally driving a motor vehicle for the next forty years and remand to the District Court for resentencing.
JUSTICES REGNIER, LEAPHART, RICE and NELSON concur.