

DA 06-0653

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 148

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

ALVIN J. DUNCAN,

  Defendant and Appellant.


APPEAL FROM:  District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DC-04-48
Honorable Katherine M. Irigoin, Presiding Judge


COUNSEL OF RECORD:

  For Appellant:

   Roy W. Johnson, Attorney at Law, Billings, Montana

  For Appellee:

   Honorable Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

   Mike Weber, County Attorney, Sidney, Montana


     Submitted on Briefs: February 13, 2008

        Decided: April 29, 2008


Filed:

           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Alvin J. Duncan ("Duncan") was convicted by a jury of two counts of felony sexual assault, and sentenced to forty years in prison, with twenty-four years suspended. He appeals both the jury's verdict and the legality of his sentence. We affirm in part, and reverse and remand in part.

¶2    Duncan raises the following issues on appeal:

¶3    I.  Did the District Court err by denying Duncan's motion to dismiss the charges pertaining to C.S.?

¶4    II. Did the District Court abuse its discretion by denying Duncan's motion to sever the charges?

¶5    III. Did the District Court abuse its discretion by denying Duncan's motion to continue the trial?

¶6    IV. Was the jury's verdict supported by sufficient evidence?

¶7    V. Was the sentence imposed by the District Court legal?

## BACKGROUND

¶8    In the same information, the State charged Duncan with sexually assaulting his stepdaughter, C.S., and her friends, V.G. and N.M., all minors. The State later amended the information to add a fourth count against Duncan: sexual intercourse without consent with C.S. The offenses all allegedly took place in Duncan's home during the summer of 2004.

¶9    During a search of Duncan's house, the police seized C.S.'s comforter as evidence. The comforter was stored in the state crime laboratory, but was destroyed

2

when the sprinklers in the evidence lab malfunctioned.  The malfunction occurred before the comforter could be tested for the presence or absence of Duncan's DNA.  Duncan subsequently moved to dismiss the two charges concerning C.S., arguing that the State's destruction of potentially exculpatory evidence denied him due process of law.

¶10    Prior to trial, Duncan also moved to sever the charges.  The District Court denied his motion, holding that the offenses were properly joined under § 46-11-404(1), MCA, and that the consolidation of the charges would not unfairly prejudice Duncan's defense. The District Court ruled on both the motion to dismiss and the motion to sever, as well as several of Duncan's other pre-trial motions, two days before trial was scheduled to begin. Duncan immediately filed a motion to continue the trial, arguing that in light of the District Court's then recent rulings, he needed more time to prepare his defense.  The District Court denied his motion to continue, and the matter proceeded to a jury trial.

¶11    At trial, each of the victims took the stand to describe the alleged sexual assaults. C.S. testified that Duncan frequently hugged her, and that while he was hugging her, his hands would roam to her chest, thighs, or buttocks.  During the summer of 2004, when her mother was at work, C.S. said Duncan invited her into his bedroom.  She alleged that Duncan asked her to lie down on the bed and take off her pants, so he could "check[] [her] for ticks."  Then, C.S. testified, he penetrated her with his finger and his penis.  C.S. claimed that Duncan forced her to have sexual intercourse on at least one other occasion, and repeatedly asked her if she wanted to have sex with him.

¶12    One night during that same summer, N.M. slept over at C.S.'s house.  At about one o'clock in the morning, N.M. testified, she felt a hand on her chest.  N.M. claimed

3

she awoke to find Duncan's hand underneath her bra. She asked him to stop and threatened to tell his wife.

¶13 V.G., nine years old, was a friend of Duncan's youngest stepdaughter. V.G. testified that Duncan often tickled her. Twice, she testified, he touched her in her "lower part" when he tickled her. The first time, she alleged, he "backed me into a corner and started tickling me and kept going lower and lower . . . . [T]hat was above my swimming suit and my shorts." The second time, she claimed, "he went lower and lower, and this time under my bathing suit still the front area." V.G. did not believe that Duncan had touched her by accident, because "it was longer than he tickled me on my stomach." Duncan's youngest stepdaughter testified that she witnessed this last incident: "I saw him, because [V.G.] was backed into a corner and he was tickling her, and then I saw him reach down her pants."

¶14 The jury convicted Duncan of sexually assaulting N.M. and V.G., and acquitted him of sexually assaulting and raping C.S. As part of the pre-sentence investigation report (PSI), Duncan submitted to a psychological evaluation performed by Michael Sullivan ("Sullivan"), the director of a sex offender treatment program. Sullivan classified Duncan as a Level I, or low risk, sex offender. Throughout the evaluation and the sentencing hearing, Duncan maintained his innocence, and denied assaulting the girls. He claimed the girls had conspired against him to fabricate the charges. Duncan believed C.S. disliked him and wanted to get rid of him so her divorced parents could reunite. At the sentencing hearing, Sullivan testified that Duncan would be ineligible for most community-release treatment programs, due to the fact that he denied committing the

sexual assaults. When the District Court pronounced its sentence, it cited Duncan's lack of remorse as a factor influencing its decision. Duncan appeals both of his convictions as well as his sentence.

## DISCUSSION

¶15 **I. Did the District Court err by denying Duncan's motion to dismiss the charges pertaining to C.S.?**

¶16 On appeal, Duncan claims that the District Court never ruled on his motion to dismiss the charges concerning C.S., and that the court's failure to rule constitutes error.[1] Our review of the record suggests otherwise. On March 23, 2006, Duncan filed his motion to dismiss. The District Court addressed this motion, along with Duncan's other pre-trial motions, at the final pre-trial conference on April 28, 2006. On May 9, 2006, the clerk of court telephoned Duncan's attorney to notify him that the court had orally denied all his pending pre-trial motions—a fact which Duncan himself acknowledges in the motion for continuance he filed later that day. The District Court did not issue any written order or explanation concerning its ruling on the motion to dismiss.

¶17 Though not properly couched, Duncan's challenge essentially presents a question of law: whether the District Court erred by denying his motion to dismiss based on the destruction of evidence in state custody. We review a district court's decision to grant or deny a motion to dismiss to determine if the court applied the law correctly. *State v.*

---

[1]Duncan argues that the District Court's denial of his motion to dismiss significantly impacted the preparation of his defense and trial strategy with respect to the other two counts of sexual assault. Thus, we conclude the issue is not moot, though Duncan was acquitted on both counts concerning C.S.

*Hicks*, 2006 MT 71, ¶ 25, 331 Mont. 471, ¶ 25, 133 P.3d 206, ¶ 25. To prevail on his due process claim, Duncan must prove that the State negligently suppressed evidence which was exculpatory and vital to his defense. *State v. Belgarde*, 1998 MT 152, ¶ 16, 289 Mont. 287, ¶ 16, 962 P.2d 571, ¶ 16. Exculpatory evidence is evidence that "[w]ould have tended to clear the accused of guilt, to vitiate a conviction." *Belgarde*, ¶ 16 (internal citation omitted).

¶18 Duncan has failed to prove that the evidence in question was exculpatory. The comforter in question was seized from C.S.'s room. C.S. testified that Duncan forced her to have sex with him in his bedroom, on his bed. Even assuming that her comforter would have tested negative for Duncan's DNA, this evidence would not have exonerated him of the charges concerning C.S. Since the comforter had no potential to clear Duncan of guilt, we conclude Duncan was not deprived of due process of law. Thus, the District Court did not err in denying Duncan's motion to dismiss.

¶19 **II. Did the District Court abuse its discretion by denying Duncan's motion to sever the charges?**

¶20 The decision to sever charges which were brought jointly to trial is entirely within the discretion of the district court. *State v. Riggs*, 2005 MT 124, ¶ 34, 327 Mont. 196, ¶ 34, 113 P.3d 281, ¶ 34. We review a district court's decision to deny a motion to sever for abuse of discretion only. *State v. Freshment*, 2002 MT 61, ¶ 25, 309 Mont. 154, ¶ 25, 43 P.3d 968, ¶ 25. The burden is on the defendant seeking severance to prove that the charges should not have been joined under § 46-11-404(1), MCA, or that severance under

§ 46-13-211(1), MCA, is necessary to prevent unfair prejudice. *Riggs*, ¶ 34. We have cautioned that this burden is not easily discharged:

> It is not sufficient for a criminal defendant to prove that he will face some prejudice as a result of a joint trial, or that he stands a better chance of acquittal if separate trials are held. Rather, a criminal defendant must prove that the prejudice is so great as to prevent a fair trial.

*Riggs*, ¶ 34.

¶21 ***1. Were the charges properly joined under § 46-11-404(1), MCA?***

¶22 Section 46-11-404(1), MCA, provides that two or more charges may be tried jointly if they "are of the same or similar character or are based on the same transactions connected together or constituting parts of a common scheme or plan." The District Court ruled that the charges were properly joined because they all allegedly took place at Duncan's home, during the same time period (the summer of 2004), and were similar in character. On appeal, Duncan argues that the charges were improperly joined because the witnesses' testimony did not overlap.

¶23 Our review of a charging document to determine whether the charges were properly joined presents a question of law which we review de novo. *State v. Southern*, 1999 MT 94, ¶ 17, 294 Mont. 225, ¶ 17, 980 P.2d 3, ¶ 17. Section 46-11-404(1), MCA, provides two separate scenarios in which charges may be joined: (1) they are "of the same or similar character," or (2) they are "based on the same transactions connected together" or are part of "a common scheme or plan." Overlapping evidence is not a prerequisite to joinder, but rather just one of the factors we consider when evaluating whether charges are part of "a common scheme or plan." *See e.g. Southern*, ¶ 23. In the

7

instant case, however, we need not consider whether the charges were part of a common scheme, because the charges are "of the same or similar character."

¶24 We consider multiple factors when determining whether charges are "of the same or similar character," including:

> (1) whether the charges are brought under the same statute;
> (2) whether the charges involve similar victims, locations, or modes of operation;
> (3) whether the charged conduct occurred in a narrow time frame; and
> (4) whether the charged conduct occurred in a limited geographical area.

*Southern*, ¶ 19. Here, three of the charges were brought under § 45-5-502, MCA. Two of the offenses involved the same victim, Duncan's stepdaughter. All three alleged victims were female, and were between the ages of nine and fifteen. Each of the offenses allegedly occurred at Duncan's house, in the summer of 2004. Accordingly, we conclude the charges are of the same character and were properly joined under § 46-11-404(1), MCA.

¶25 *2. Did the consolidation of the charges result in unfair prejudice to Duncan?*

¶26 In *Southern*, we recognized three ways in which a district court's decision to consolidate charges might prejudice a defendant:

> First, a jury may consider the criminal defendant facing multiple charges a "bad man" and accumulate evidence until it finds the defendant guilty of something. Second, a jury may use proof of guilt on one count to convict the defendant of a second count even though that proof would be inadmissible at a separate trial on the second count. Third, the defendant may be prejudiced if he or she wishes to testify on one charge but not on another.

*Southern*, ¶ 30. Duncan alleges that he suffered all three types of prejudice; we consider each claim individually.

¶27 **a. Accumulation of evidence**

¶28 Duncan argues that the State intentionally presented him as a "bad man" in this case by consolidating the charges against him. He asserts that the jury convicted him based on the accumulation of evidence from the charges, claiming that "[t]he charges brought by the State collectively added up to much more than each charge would have individually." Duncan contends that it is "ludicrous to think that the jury would not infer a criminal disposition on the part of the accused particularly considering the nature of the charges in this case." Yet we have previously rejected the notion that the "emotional nature" of a sex crime against a minor "somehow indiscriminately causes a jury to accumulate evidence." *Freshment*, ¶ 31. The fact that a defendant is tried for multiple sex crimes against minors does not, by itself, automatically entitle a defendant to severance. *Freshment*, ¶¶ 31, 44 (upholding an order denying severance of multiple charges of sexual assault against a minor). *Accord State v. Martin*, 279 Mont. 185, 197, 926 P.2d 1380, 1388 (1996).

¶29 The defendant bears the burden of proving that the accumulation of evidence prejudiced the jury's verdict. *Martin*, 279 Mont. at 192, 926 P.2d at 1384-85. We have repeatedly held that "an unsupported, general assertion of the cumulative effect of evidence alone is not sufficient to demonstrate prejudice requiring severance." *Freshment*, ¶ 30. *See also Martin*, 279 Mont. at 192, 926 P.2d at 1385. Duncan's broad assertions of prejudice lack the requisite support and specificity, thus, we conclude he has failed to meet his burden of proof.

¶30   **b. Inadmissible evidence**

¶31   The District Court ruled that Duncan failed to prove that the evidence the State intended to offer would be inadmissible under the modified *Just* doctrine. *See e.g. Southern*, ¶¶ 33-42 (applying modified *Just* rule, *State v. Just*, 184 Mont. 262, 602 P.2d 957 (1979), to determine whether challenged evidence would have been admissible at separate trials, and refusing to find prejudice "where the evidence is simple and distinct"). On appeal, Duncan argues that "the jury used what they determined was proof of guilt on count 3. to convict on count 2., even though the testimony concerning one event would have been inadmissible at a separate trial. The evidence presented in this case was not simple and direct." Duncan does not specify which witness's testimony he deems inadmissible, and fails to provide any further specific argument in support of this conclusory statement. In fact, the only evidence he offers in support of his argument is the fact that, during deliberations, the jury requested to see a transcript of V.G.'s testimony (the District Court subsequently denied the request). Consequently, we conclude that Duncan has failed to establish that the evidence entered against him at trial would have been inadmissible at separate trials.

¶32   **c. Self-Incrimination**

¶33   Before trial, Duncan expressed the desire to testify to some of the counts, but not all of them, and argued that severance was necessary to protect his right against self-incrimination. The District Court specifically addressed this concern, assuring Duncan that if he "wishes to testify as to one count but not another, the court will limit cross examination to the testimony elicited in direct examination to only those counts

10

addressed by the defendant in direct examination." Duncan chose to take the stand in his own defense; when the State cross-examined him, he did not raise a single objection to the scope of the cross.

¶34 A defendant cannot claim that his right against self-incrimination has been prejudiced where the State has not exploited the defendant's right to testify by cross-examining him on the matters on which the defendant wished to avoid testifying. *State v. Campbell*, 189 Mont. 107, 123, 615 P.2d 190, 199 (1980) (citing *Bradley v. United States*, 433 F.2d 1113, 1123 (D.C. Cir. 1969)). On appeal, Duncan fails to allege that the State exploited its opportunity to cross-examine him. Thus, he cannot demonstrate that his right against self-incrimination has been prejudiced.

¶35 In sum, we conclude that the charges were properly joined under § 46-11-404(1), MCA. Duncan has failed to demonstrate that the consolidation of the charges unfairly prejudiced him. Thus, the District Court did not abuse its discretion in denying Duncan's motion to sever the charges.

¶36 **III. Did the District Court abuse its discretion by denying Duncan's motion to continue the trial?**

¶37 We review discretionary rulings, including a district court's decision to grant or deny a motion to continue, for abuse of discretion only. *State v. Timblin*, 254 Mont. 48, 50, 834 P.2d 927, 928 (1992). A party seeking a continuance must show that they have demonstrated sufficient diligence in preparing for the trial, and that the continuance is in "the interests of justice." *State v. Borchert*, 281 Mont. 320, 324, 934 P.2d 170, 173-75 (1997); § 46-13-202(2), MCA. This Court will not overturn a district court's decision to

11

deny a continuance "unless the district court abused its discretion and the ruling prejudices the defendant." *State v. Ibarra-Salas*, 2007 MT 173, ¶ 13, 338 Mont. 191, ¶ 13, 164 P.3d 898, ¶ 13.

¶38 As discussed in more detail above, Duncan filed a number of pre-trial motions, most significantly a motion to dismiss and a motion for severance, which the District Court did not rule on until two days before the trial was scheduled to begin. Immediately after receiving notice that the court had orally denied his motions, Duncan filed a motion for a continuance.

¶39 In his motion, Duncan argued that the District Court's failure to rule on his pre-trial motions until two days before trial and its failure to issue written orders explaining those rulings "significantly hampered [his] trial preparation." He claimed that "without knowing whether the motion to sever would be granted, [he] could not prepare a final trial strategy with any degree of certainty" given that "[t]he nature of voir dire and the opening statement were very much dependant [sic] on the rulings and reasons therefore." Duncan also alleged that he could not prepare his expert witness for trial until he received the court's ruling on his motion for an independent medical examination of the victims, which had been filed on April 26, 2006. In denying Duncan's motion to continue, the court concluded that denial of these pre-trial motions was "not a good enough reason for continuance of the trial."

¶40 Duncan's motion is insufficient on its face because it fails to make any showing of diligence in preparing for the trial. *Borchert*, 281 Mont. at 326-27, 934 P.2d at 174-75; § 46-13-202(3), MCA. Demonstrating that a continuance is in the interests of justice is

12

not enough; the defendant must also make an affirmative showing of his due diligence. *Borchert*, 281 Mont. at 326-27, 934 P.2d at 174-75; § 46-13-202(3), MCA. Prior to Duncan's May 9, 2006 motion to continue, the District Court had already granted Duncan two continuances: one on August 30, 2005, and another on March 9, 2006. Duncan failed to make the requisite showing of diligence, and to explain why, after two continuances and more than two and a half years since the first information was filed, he was not afforded sufficient time to prepare his defense. For these reasons, Duncan has failed to demonstrate that the District Court abused its discretion in denying his third motion to continue.

¶41 **IV. Was the evidence sufficient to support Duncan's conviction on two counts of felony sexual assault?**

¶42 The jury convicted Duncan of sexually assaulting V.G. and N.M.; Duncan argues that these convictions are not supported by sufficient evidence. When we review a conviction to determine whether it was supported by sufficient evidence, we view the evidence in the light most favorable to the prosecution. *State v. Rennaker*, 2007 MT 10, ¶ 16, 335 Mont. 274, ¶ 16, 150 P.3d 960, ¶ 16. Our standard of review is whether any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. *Rennaker*, ¶ 16. A jury's determination with regard to disputed questions of fact and the credibility of the witnesses is entitled to great deference, and will not be disturbed on appeal. *Rennaker*, ¶ 16.

¶43 In a sex offense case, the conviction may be based solely on the uncorroborated testimony of the victim. *Rennaker*, ¶ 16. Here, V.G. and N.M. each testified, in detail,

that Duncan sexually assaulted them. Based on that testimony alone, a rational trier of fact could have found, beyond a reasonable doubt, that Duncan was guilty of sexual assault.

¶44 In Montana, we do not require corroboration of a sex offense victim's testimony. *State v. Gilpin*, 232 Mont. 56, 70, 756 P.2d 445, 453 (1988). Nonetheless, in this case, the State did present additional evidence to support the victims' testimony. Duncan's youngest stepdaughter claimed to have witnessed one of the incidents. She testified that she saw Duncan tickling V.G. in the hallway, and that she saw Duncan reach down V.G.'s pants. C.S. alleged that Duncan would often walk around the house with his genitalia exposed, wearing nothing but a blue bathrobe. The police found a blue bathrobe matching this description when they searched the house, which the State introduced as an exhibit during the trial.

¶45 Duncan challenges the sufficiency and credibility of N.M.'s testimony, pointing to inconsistencies in her trial testimony and her statements made to law enforcement officials when she was first interviewed in Miles City. It is within the province of the trier of fact to evaluate the credibility of witnesses, and determine what weight to assign to their testimony. *Hicks*, ¶ 27. We have repeatedly declined to disturb disputed questions of witness credibility on appeal. *Rennaker*, ¶ 16; *Hicks*, ¶ 27. By challenging N.M.'s credibility, Duncan essentially asks this Court to disregard the jury's role as the trier of fact in this case and to re-weigh the evidence on appeal. We refuse to do so.

¶46 Duncan also argues that the State failed to meet its burden of proving each element of sexual assault as defined in § 45-5-502, MCA, because the State did not prove that he

acted with the intent to gratify a sexual desire. Section 45-5-502, MCA, provides that "[a] person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault." Section 45-2-101(67), MCA, defines "sexual contact" as "touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely: (a) cause bodily injury to or humiliate, harass, or degrade another; or (b) arouse or gratify the sexual response or desire of either party." Neither victim testified that Duncan was aroused, nor is explicit evidence of sexual arousal required. We have repeatedly held that a defendant's intent to gratify his sexual desire may be inferred from his conduct alone. *State v. McLain*, 249 Mont. 242, 246-47, 815 P.2d 147, 150 (1991); *Gilpin*, 232 Mont. at 69, 756 P.2d at 452; *State v. Kestner*, 220 Mont. 41, 46, 713 P.2d 537, 540 (1986). Thus the jury may have inferred the statutorily required intent from Duncan's conduct.

¶47 Finally, Duncan argues that N.M.'s testimony fails to prove that he had "sexual contact" with her. When asked what part of her breast Duncan touched, N.M. responded "the top part." Duncan argues this testimony is ambiguous: "[I]t is not clear if she meant the breast or top of her chest." Duncan's attempt to split hairs over the victim's testimony accomplishes nothing. The Legislature purposely gave a broad definition to the term "sexual contact" in § 45-2-101(67), MCA:

> Use of the terms "sexual or other intimate parts" indicates that the legislature did not intend to restrict the crime to a touching of the genitalia of either sex or a touching of a female's breast, but instead intended to give the terms a broader application. In keeping with the focus of sexual assault statutes on the outrage, disgust or shame engendered in the victim, other courts have held that the term "intimate parts" in such statutes include the buttocks, the hips, and the prepubescent chest of a 7-year old girl.

15

*State v. Weese*, 189 Mont. 464, 467-68, 616 P.2d 371, 374 (1980) (citations omitted). Duncan reached under a fifteen-year-old girl's t-shirt and bra, and touched her chest while she was sleeping. There is no doubt that his act falls within the definition of "sexual contact."

¶48 In sum, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence upon which a rational trier of fact could have found, beyond a reasonable doubt, that Duncan sexually assaulted V.G. and N.M.

¶49 **V. Was the sentence imposed by the District Court legal?**

¶50 Where, as here, an offender is sentenced to more than one year in prison, we review that sentence for legality only. *State v. Herd*, 2004 MT 85, ¶ 22, 320 Mont. 490, ¶ 22, 87 P.3d 1017, ¶ 22. In such cases, any challenges to the equity of the sentence must be brought before the Sentence Review Division. *Herd*, ¶ 22.

¶51 Duncan claims the District Court's sentence is illegal because the court violated his Fifth Amendment right against incrimination by basing his sentence, in part, on his failure to show remorse, and to confess to the two convictions. At the hearing, the District Court stated that it based its sentence, in part, on Duncan's refusal to admit his crimes, as well as his lack of remorse. In its written judgment, the District Court cites Duncan's lack of remorse, but does not purport to rely on his failure to admit the crimes: "[T]he defendant has demonstrated no remorse, responsibility or accountability for his acts; . . . the instant offenses require mandatory minimums and the defendant's lack of remorse require[s] sentences that are longer than mandatory minimums[.]" Where, as

here, there is a discrepancy or variation between the content of the oral and written pronouncement of judgments, the oral pronouncement controls. *Rennaker*, ¶ 48.

¶52 District courts are prohibited from "augmenting a defendant's sentence because he refuses to confess a crime or invokes his privilege against self-incrimination." *State v. Imlay*, 249 Mont. 82, 91, 813 P.2d 979, 985 (1991). Requiring a defendant to make an admission of guilt before he appeals his conviction "would . . . undermine[] his constitutionally protected right not to incriminate himself and [would] render[] his appeal meaningless." *State v. Cesnik*, 2005 MT 257, ¶ 24, 329 Mont. 63, ¶ 24, 122 P.3d 456, ¶ 24.

¶53 Courts may, however, consider a defendant's lack of remorse at sentencing. *State v. Shreves*, 2002 MT 333, ¶ 20, 313 Mont. 252, ¶ 20, 60 P.3d 991, ¶ 20. If lack of remorse is a factor in the sentence, the court "must point to affirmative evidence in the record demonstrating lack of remorse." *Rennaker*, ¶ 51. The court may not simply infer a defendant's lack of remorse from his silence or failure to acknowledge his convictions. *Rennaker*, ¶ 51.

¶54 Here, the District Court relied on Duncan's lack of remorse, but did not affirmatively point to any evidence in the record to support that finding. On appeal, the State argues that there is sufficient evidence in the record from which we could infer Duncan's lack of remorse. Even if true, the presence of such evidence in the record would not cure the error. The District Court must tie its finding of lack of remorse to actions or statements made by Duncan *in its pronouncement of the sentence*. *Rennaker*, ¶ 51. Thus, we conclude that the District Court erred by relying on Duncan's purported

17

lack of remorse without pointing to any affirmative evidence in the record to support such a finding.

¶55 Finally, through no error on the part of the District Court, several of the conditions originally attached to Duncan's sentence are now illegal in light of our recent decisions in *State v. Ashby*, 2008 MT 83, 342 Mont. 187, ___ P.3d ___, and *State v. Winkel*, 2008 MT 89, 342 Mont. 267, ___ P.3d ___. On remand, we ask the District Court to re-evaluate each of the sentencing conditions imposed in light of these recent changes in the law.

## CONCLUSION

¶56 In conclusion, we hold that the District Court did not err in denying Duncan's motion to dismiss the charges concerning C.S. All four charges were joined properly under § 46-11-404(1), MCA, and Duncan has failed to demonstrate that he suffered unfair prejudice as a result. Thus, we hold that the District Court did not abuse its discretion in denying Duncan's motion to sever the charges. Since Duncan failed to make an affirmative showing of his diligence in preparing for trial, we cannot say that the District Court abused its discretion in denying his third request for a continuance. Our review of the record indicates that the jury's verdict was supported by sufficient evidence. Finally, we conclude that the District Court erred by sentencing Duncan in part based on his lack of remorse, without pointing to affirmative evidence of his lack of remorse in its oral or written pronouncement of the sentence. Thus, we affirm in part, and reverse and remand in part for re-sentencing.

/S/ W. WILLIAM LEAPHART

18

We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS


Justice Jim Rice concurring in part and dissenting in part.

¶57 I concur with the Opinion with regard to Issues I-IV, but dissent from part of the holding under Issue V.

¶58 I understand that the Court is reversing Duncan's sentence under Issue V for the reason that the District Court uttered the words, "To date you've not shown any remorse" during the oral pronouncement of sentence.

¶59 We have held that "in imposing sentence, the sentencing court may consider any relevant evidence relating to the nature and circumstances of the crime, *the character of the defendant*, the defendant's background history, mental and physical condition, and *any evidence the court considers to have probative force*." *State v. Collier*, 277 Mont. 46, 63, 919 P.2d 376, 387 (1996) (emphasis added). I believe the Court's holding too narrowly constrains the application of this general rule.

¶60 The Court relies on *Rennaker*, a case in which I concurred under a different rationale and stated:

> A defendant's attitude, personality, demeanor and the respect which he appears to hold for society in general and individuals in particular are factors which sentencing judges consider, and should consider, in crafting the appropriate sentence. . . . I submit that a sentencing judge can and should gain insight into a defendant's character and potential for future rehabilitation by observing the defendant's reaction to the human suffering going on around him. Volumes are spoken about the person's character

who cannot be "remorseful" about human suffering, whatever its cause. A person who cares nothing about those around him lacks a moral compass and is a dangerous person indeed and who, for the protection of society, should be supervised or imprisoned. . . .

. . . A defendant's failure to "break his silence" about the pain or devastation around him is, in my view, an appropriate factor for the sentencing court to consider and from which to draw a conclusion that the defendant has or feels no remorse for those around him.

*Rennaker*, ¶ 56 (J. Rice, concurring)

¶61   I agreed with reversal in *Rennaker* because the sentencing judge went further than simply considering remorse by noting Rennaker's failure to acknowledge what he did was wrong, thereby indicating that Rennaker's claim of innocence or right to remain silent was being held against him.  However, no such statement was made here.

¶62   The Court acknowledges that a sentencing court may consider lack of remorse but requires the court to "affirmatively point to any evidence in the record to support that finding."  Given the clear need for sentencing judges to consider a defendant's character and attitude, I find this requirement, as I did in *Rennaker*, to be overly stringent, inconsistent with the broad sentencing authority described in *Collier* to consider a wide range of information, and a micro-management of the sentencing process.  I would not reverse Duncan's sentence for the District Court's utterance of these seven words.


/S/ JIM RICE


20