No. 81-411

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JESSE D. STEPHENS,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable Douglas Harkin, Judge presiding.

Counsel of Record:

For Appellant:

Hirst, Dostal & Withrow, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps III, County Attorney, Missoula,
Montana

---

Submitted on briefs: March 5, 1982

Decided: **MAY 5 1982**

Filed: MAY 5 1982

_Thomas J. Kearney_
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Jesse D. Stephans (Stephans) appeals from a conviction of robbery following a trial before a jury in the Fourth Judicial District, Missoula County. He presents the following issues for review:

(1) Whether the testimony of Forrest Bex (Bex) should have been allowed in evidence over the objection as to his competency as a witness.

(2) Whether the sentence imposed, which is twice as long as that recommended by the presentence report, is valid.

We affirm.

On the evening of February 2, 1980, Carla E. Rasmussen (Rasmussen) was the only clerk in a Circle K store in East Missoula, Montana. About 9:45 P.M. two men came into the store -- one red-head and the other partially bald. They bought a dollar's worth of gas and a cold pack of beer, then left. A few minutes later the partially bald man returned. His hand was in his pocket pointed like a gun and he asked for her money. Rasmussen believed that he had a gun and was very frightened. She placed the bills from both tills into a bag and gave the bag to the man. He then made her lie down flat on the floor.

After a few minutes, Rasmussen called the police and gave them a statement, including a description of the men. From a photograph lineup, she picked out Bex as the red-head and Stephans as the partially bald man.

I.

Whether the testimony of Bex should have been allowed in evidence over the objection as to his competency as a witness.

During the trial the prosecution called Bex to testify. The defense attorney requested an examination of the witness regarding his competency to testify. An in camera examination was held where both attorneys questioned Bex in the presence of the judge. During the examination, it was revealed that in 1974 Bex had been charged with arson which resulted in his being evaluated at Warm Springs State Hospital. Bex did not stand trial as the District Court found him unfit at that time to proceed because he was unable to assist in his own defense and to understand the proceedings against him.

The judge in the present case had before him the 1976 evaluations which provided, in part:

"2. The following diagnoses were given to him:

"A. Adjustment reaction of adolescence

"B. Inadequate personality

"C. Episodic excessive drinking

"D. Borderline mental retardation

"E. Non-psychotic OBS with other physical condition [organic brain syndrome]

"3. The medical staff of the hospital found that Mr. Bex is suffering from a mental disease or defect and in our opinion, his capacity to understand the proceedings against him and to assist in his own defense is impaired.

"4. It is also the opinion of the medical staff of the hospital that Mr. Bex's ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time of the criminal conduct charged was impaired."

The Warm Springs State Hospital evaluations went on to conclude:

"Mr. Bex seems ready to be returned to your custody for disposition and we recommend that he have some amount of supervision, and follow-up psychiatric care, if allowed to live in the community again. He seems very much improved; has accepted rules and regulations well, without difficulties."

During the in camera examination held in the present case, Bex testified as to his past and to his ability and intention to tell the truth. At the end of the examination, the judge found that the witness was "capable of expressing himself concerning the matter so as to be understood by the judge and jury" and that he was "capable of understanding the duty of the witness to tell the truth under Rule 601." When the trial resumed, the judge instructed the jury, prior to the direct examination of Bex, as follows:

> "The law requires that I determine whether or not a witness is capable of expressing himself so as to be understood by the judge and the jury. I have determined that this witness is capable of expressing himself in such a manner.

> "It also requires that I determine whether or not he is capable of understanding his duty as a witness to tell the truth. I find that he is capable of making that understanding.

> "The weight to be given his testimony is solely within the discretion of the jury."

Bex then testified before the jury.

The Montana Rules of Evidence, Rule 601, states:

> "(a) General rule competency. Every person is competent to be a witness except as otherwise provided in these rules.

> "(b) Disqualification of witnesses. A person is disqualified to be a witness if the court finds that (1) the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or (2) the witness is incapable of understanding the duty of a witness to tell the truth."

The rules of evidence were enacted on July 1, 1977. Prior to that the Montana statute provided that those of unsound mind could not be witnesses. Section 93-701-3(1), R.C.M. 1947. Even with that statute this Court held that "there is no presumption that a witness is incompetent and the burden is on the party asserting incompetency to prove

-4-

it." State v. Coleman (1978), 177 Mont. 1, 27, 579 P.2d 732, 748. The enacting of the rules in 1977 did not create any presumptions. The defendant is required to prove incompetency and it is the function of the trial judge to determine the competency of the witness to testify. Coleman, 177 Mont. at 27, 579 P.2d at 748. The Defendant did not submit any additional evidence of incompetency beyond the 1975 and 1976 Warm Springs State Hospital evaluations. While these reports show 1976 diagnoses of mental disorders, the reports also indicate that he was very much improved. In and of themselves, these reports are not sufficient to require a conclusion that the witness was incompetent, incapable of expressing himself concerning the matter, or incapable of understanding the duty to tell the truth. After considering such reports and after watching Bex answer questions, the District Court concluded that Bex was capable of expressing himself in a manner so as to be understood and was capable of understanding the duty of a witness to tell the truth. The record discloses facts upon which the District Court could properly reach such a conclusion.

"It is within the discretion of the trial judge to determine competency and his findings will not be overturned absent an abuse of discretion." State v. Camitsch (1981), _____ Mont. _____, 626 P.2d 1250, 1256, 38 St.Rep. 563, 569; State v. Shambo (1958), 133 Mont. 305, 309, 322 P.2d 657, 659.

We find no abuse of discretion in allowing the testimony of Bex.

II.

Whether the sentence imposed, which is twice as long as that recommended by the presentence report, is valid.

-5-

The sentence hearing was held April 30, 1981. At that time, the court had before it a presentence report prepared by the Department of Institutions, which recommended that Stephans be sentenced to fifteen years at the Montana State Prison and designated a dangerous offender for parole purposes.

The trial judge sentenced Stephans to thirty years at Montana State Prison and designated him as a dangerous offender for parole purposes.

Upon imposing the sentence, the judge gave reasons for the sentence:

> "I also find that although the amount taken by the Defendant in the robbery was only about twenty-eight dollars, the Defendant caused the store clerk to be extremely terrified and fearful for her life. The Defendant continues to show no remorse for his actions and belittles the seriousness of his crime and its effect upon the victim.
>
> ". . .
>
> "The court concludes that the imprisonment of the Defendant will serve to protect the public from any additional crimes being convicted [sic] by the Defendant. Imprisonment of the Defendant should be of sufficient length to act as a sufficient deterrent of the Defendant not to commit an additional crime. Rehabilitation of the Defendant while on probation has no chance of success. The Defendant presents a danger to the public and should be designated as a dangerous offender for the purpose of parole eligibility."
> (Transcript of April 30, 1981 at 20-21.)

The judge's findings of fact and conclusions of law contained a detailed basis for the sentence, including that Stephans had previous convictions of three felonies, three misdemeanors, and three parole violations, and show that the judge was aware of the contents of the presentence report. When asked by the defendant's attorney to state reasons why the presentence report's recommendation of fifteen years was not followed, the judge replied:

-6-

> "I had an opportunity to observe this Defen-
> dant during the entire trial. I heard his
> testimony in court. I watched him during
> the trial. I continued to observe him today.
> By his own admissions, he does not acknowl-
> edge the seriousness of the offense. He con-
> tinued to think that he should be allowed
> another chance. He has had chance after
> chance after chance. I do not want him in
> this community because he poses a danger to
> the people of this district, and I will not
> allow him to remain here." (Tr. of April 30
> at 21-22.)

The defendant has the right to have his sentence reviewed for equity, disparity, or considerations of justice by the Sentence Review Board. He has the right to appeal his sentence to the Montana Supreme Court to determine its legality. State ex rel. Greely v. District Court of the Fourth Judicial District (1979), 180 Mont. 317, 327, 590 P.2d 1104, 1110. Stephans contends that although the judge gave reasons for his sentence, he did not explain its disparity with the recommendation in the presentence report, and therefore, the sentence is not legal.

Section 46-18-111, MCA, provides that in the event the court requests a presentence report, the report is to be considered by the court. The section reads:

> "Presentence investigation. No defendant con-
> victed of a crime which may result in commit-
> ment for 1 year or more in the state prison
> shall be sentenced or otherwise disposed of
> before a written report of investigation by
> a probation officer is presented to and con-
> sidered by the court unless the court deems
> such report unnecessary. The court may, in
> its discretion, order a presentence investi-
> gation for a defendant convicted of any
> lesser crime or offense."

There is no requirement that the sentencing judge adopt the recommendation of the presentence report or that he state reasons for any discrepancy between the recommended sentence and the one actually imposed. The sentencing judge must only specify reasons why the sentence was imposed. State v.

Stumpf (1980), _____ Mont. _____, 609 P.2d 298, 37 St.Rep. 673; Cavanaugh v. Crist (1980), _____ Mont. _____, 615 P.2d 890, 37 St.Rep. 1461.  The District Court met this requirement.

There is no basis for the sentence to be considered illegal.  The District Court's judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices