OP 09-0609

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 43

FILED

March 9 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

JEREL DRIVER, CHARLES SMITH, ALAN COMBS,
ABEL GONZALES, MICHAEL HAMMOND,
MARTIN SWAN, CLIFFORD DELGER,
DANIEL MILES, TIMOTHY DeHERRERA,
WILLIAM PIPER, RONALD HUMMEL,
STEVEN WHITECLOUS, CLEVE SPANG,
ZANE WYMORE, DARIN GUCKEEN,
TOMMY SETH DELLAR,

        Petitioners,

    v.

THE SENTENCE REVIEW DIVISION IN THE
SUPREME COURT OF THE STATE OF MONTANA,

        Respondent.

ORIGINAL PROCEEDING:      Petition for Writ of Supervisory Control

COUNSEL OF RECORD:

        For Petitioners:

            Joslyn Hunt, Chief Appellate Defender (argued);
            Eric Olson (argued), Assistant Public Defender; Helena, Montana

        For Respondent:

            Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
            Assistant Attorney General (argued); Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney; Mark Murphy, Chief
            Criminal Deputy County Attorney (argued); Billings, Montana

        Argued and Submitted:  January 27, 2010

                Decided:  March 9, 2010

Filed:

        _____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Petitioners filed a motion with the Sentence Review Division (Division) seeking clarification of the standard of review to be applied to criminal sentences submitted to the Division for review. The Division denied the Petitioners' motion, holding that the "clearly inadequate or excessive" standard under Rule 17, Mont. Sent. Rev. Div., correctly stated the appropriate standard of review. Petitioners then filed a Petition for Writ of Supervisory Control with this Court, asserting the Division was proceeding under a mistake of law.

¶2 We state the issues as follows:

¶3 *1. Is the exercise of supervisory control appropriate in this matter?*

¶4 *2. Did the Division err by denying Petitioners' motion to clarify the standard of review applicable to sentences reviewed by the Division?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 Petitioners are criminal defendants who have petitioned or intend to petition the Division for review of their sentences. On January 9, 2009, Petitioners filed a motion before the Division requesting that the Division clarify the standard it applies to sentences submitted for review. Petitioners argued that the Division should declare that the "clearly inadequate or excessive" standard in Rule 17 of the Division's Rules "is not the applicable standard." Instead, the motion asked that the Division "review its cases for equity." On May 12, 2009, the Attorney General filed a response objecting to Petitioner's motion and arguing in support of the standard stated in Rule 17.

2

¶6     The Division denied the motion, reaffirming Rule 17 as the appropriate standard of review and rejecting Petitioners' argument that their sentences should be reviewed for equity. In its order, the Division also stated that its "rules and practices . . . have considered sentences to be unjust or inequitable if they are so greatly disproportionate to the crime as to constitute cruel and unusual punishment."

¶7     Petitioners filed a Petition for Writ of Supervisory Control with this Court, arguing that the Division erred in denying its motion and was thus proceeding under a mistake of law. The State filed its response, agreeing that this was an appropriate case for the exercise of supervisory control by this Court.

## JURISDICTION & STANDARD OF REVIEW

¶8     We may assume supervisory control, as authorized by Article VII, Section 2(2) of the Montana Constitution and M. R. App. P. 14(3) (2007) (former M. R. App. P. 17), to control the course of litigation where the district court "is proceeding under a mistake of law and is causing a gross injustice." M. R. App. P. 14(3)(a); *State v. Thirteenth Jud. Dist. Ct.*, 2009 MT 163, ¶ 13, 350 Mont. 465, 208 P.3d 408; *see Sportsmen for I-143 v. Mont. Fifteenth Jud. Dist. Ct.*, 2002 MT 18, ¶ 4, 308 Mont. 189, 40 P.3d 400 (citing *Park v. Mont. Sixth Jud. Dist. Ct.*, 1998 MT 164, ¶ 13, 289 Mont. 367, 961 P.2d 1267). Our determination of whether supervisory control is appropriate is a case-by-case decision, based on the presence of extraordinary circumstances and a particular need to prevent an injustice from occurring. *Sportsmen for I-143*, ¶ 4 (citing *Park*, ¶ 13).

3

¶9     The proper basis by which this Court may review a challenge to a decision of the Sentence Review Division is through a petition for extraordinary relief. *Ranta v. State*, 1998 MT 95, ¶ 12, 288 Mont. 391, 958 P.2d 670. "Because the Sentence Review Division functions as an arm of this Court, this Court has the supervisory authority to ensure that it complies with statutes and rules governing its operations as well as the Montana Constitution and the United States Constitution." *Ranta*, ¶ 12 (citing § 46-18-901(1), MCA; Mont. Const. art. VII, § 2). Pursuant to M. R. App. P. 14(1), this Court has the power to "hear and determine such original and remedial writs as may be necessary or proper to the complete exercise of its jurisdiction." *See Ranta*, ¶ 12.

### DISCUSSION

¶10    ***1. Is the exercise of supervisory control appropriate in this matter?***

¶11    Petitioners contend that supervisory control is appropriate to correct the Division's mistake of law of applying the "clearly inadequate or excessive" standard to the review of sentences before it. The State agrees that supervisory control is appropriate, but requests that we do so to affirm that the "clearly inadequate or excessive" standard of review is appropriate.

¶12    We can exercise supervisory authority to ensure that the Division, as an arm of this Court, complies with the statutes and rules governing its operations, as well as the Montana Constitution and the United States Constitution. *Jordan v. State*, 2008 MT 334, ¶ 22, 346 Mont. 193, 194 P.3d 657 (quoting *Ranta*, ¶ 12). Because we have exclusive jurisdiction to review the Division's compliance with governing statutes and rules, as

4

well as state and federal constitutional mandates, *Jordan*, ¶ 22 (citing *Ranta*, ¶ 12), we deem this case appropriate for the exercise of supervisory control to resolve the issue raised by the petition.

¶13 **2. Did the Division err by denying Petitioners' motion to clarify the standard of review applicable to sentences reviewed by the Division?**

¶14 In its order, the Division agreed with Petitioners' observation that the Legislature did not articulate a standard of review within the statutes creating and governing the Sentence Review Division. *See* §§ 46-18-901 through 905, MCA (2007). However, noting that the statutes granted it authority to "adopt any rules that will expedite its review of sentences," § 46-18-901(4), MCA, the Division cited its purpose and standards for review of criminal sentences as set forth in Rules 16 and 17. The Division rejected Petitioners' assertion that sentences should be reviewed for abuse of discretion or equity, and affirmed the standard set forth in Rule 17, that sentences "will not be reduced or increased unless it is deemed clearly inadequate or excessive." Acknowledging that sentences may be challenged as "unjust or inequitable," the Division appeared to define this review narrowly by holding that "[t]he rules and practices of this division have considered sentences to be unjust or inequitable if they are so greatly disproportionate to the crime as to constitute cruel and unusual punishment." The Division stated that this Court "approved such analysis in *In re Jones*," 176 Mont. 412, 587 P.2d 1150 (1978).

¶15 Petitioners contend that the "clearly inadequate or excessive" standard of Rule 17 "unnecessarily limits the Division's reviewing power" and contradicts statements made by this Court that the Division "will review sentences for equity." *See State v. Herd*,

5

2004 MT 85, ¶ 22, 320 Mont. 490, 87 P.3d 1017. They note that this standard is not stated within the Division's statutory authorization. During oral argument, Petitioners focused their argument on the language within the Division's order which appeared to define inequitable sentences as only those which constitute cruel and unusual punishment. Petitioners argue that the Division should review for equity "in the broadest sense of the word, so the Division may review everything encompassing a defendant's sentence."

¶16 The State, during argument, agreed that the language within the Division's order purporting to limit review to sentences constituting cruel and unusual punishment was unduly narrow. However, the State argues that the Division's adoption of the "clearly inadequate or excessive" standard under Rule 17, pursuant to its statutory authority to promulgate rules, was an appropriate application of the statutory directive that "[t]he sentence imposed by the district court is presumed correct." Section 46-18-904(3), MCA. The State acknowledges that the Division may take into account "equity issues" and "considerations of justice," but that its primary role is the reduction of disparities in prisoner sentencing, noting Rule 16's statement that the primary objective of the Division "is to provide uniformity in sentencing."

¶17 Montana law provides for generalized, indiscriminate sentencing of criminal defendants, with term ranges and broad authority for sentencing courts to impose conditions. "One of the purposes of the 1973 Montana Criminal Code was to vest wide sentencing discretion in the trial judge who is familiar with the character and past record

6

of the defendant, and with the circumstances of the particular case." *State v. Maldonado*, 176 Mont. 322, 334, 578 P.2d 296, 303 (1978). "[I]n imposing sentence, the sentencing court may consider any relevant evidence relating to the nature and circumstances of the crime, the character of the defendant, the defendant's background history, mental and physical condition, and any evidence the court considers to have probative force." *State v. Collier*, 277 Mont. 46, 63, 919 P.2d 376, 387 (1996) (citing *State v. Klippenstein*, 239 Mont. 42, 45, 778 P.2d 892, 894 (1989)). "The District Court is given a wide scope of inquiry in sentencing." *Klippenstein*, 239 Mont. at 45, 778 P.2d at 894 (citing *State v. D.B.S.*, 216 Mont. 234, 247-48, 700 P.2d 630, 639-40 (1985)).

¶18 The Legislature "voluntarily created" the Division, *State ex rel. Holt v. Dist. Ct.*, 2000 MT 142, ¶ 12, 300 Mont. 35, 3 P.3d 608, to serve essentially as a safety net for our indiscriminate sentencing system, providing additional protection for both the public and for the individual defendant. The Division was created to review sentences challenged as being unjust or inequitable and "was charged with determining the appropriateness of criminal sentences with respect to the individual offender and a particular offense." *Jordan*, ¶ 18 (citations omitted). To assist in accomplishing this purpose, the Legislature granted the Division authority to "adopt any rules that will expedite its review of sentences." Section 46-18-901(4), MCA; *Holt*, ¶ 6.

¶19 Rule 16, Mont. Sent. Rev. Div., provides that "[t]he primary objective of the Sentence Review Division is to provide for uniformity in sentencing when appropriate" and to "ensure that the interest of the public and the defendant are adequately addressed

7

by the sentence." Regarding the public's interests, Rule 16 provides the Division shall consider the State's correctional policy "to protect society by preventing crime," will "hold an individual responsible and accountable for his/her actions," and remove "dangerous and habitual offenders from society." Regarding the defendant's interests, the rule instructs that the Division "shall ensure that persons convicted of crime are dealt with in accordance with their individual characteristics, circumstances, needs and potentialities," and shall consider "whether the offender could have been dealt with adequately by probation, suspended sentence or fine . . . ." The rule directs that the Division's review consider various factors, including the crime committed, the offender's prospect of rehabilitation, the circumstances of the crime, and the criminal history of the offender. Rule 15 requires the Division to review the record in the case, including pleadings, plea agreements, pre-sentence reports, judgments and "[o]ther documents relied on by the sentencing judge." The Division's review is procedurally governed by Rule 14 which provides that proceedings before the Division "shall be as informal as possible to allow full expression by all parties and their attorneys. The Rules of Evidence will serve as a guide but are not binding in the proceeding."

¶20 These rules together provide for an appropriately broad review of the totality of the facts and circumstances of each case, which we have previously described as a review "for equity, disparity, or considerations of justice by the Sentence Review Board." *State v. Stephens*, 198 Mont. 140, 145, 645 P.2d 387, 390-91 (1982). The Division's consideration is not cabined by rigid guidelines, and a defendant can rightly appeal to the

8

Division's judges on equitable grounds such as fairness, consistency and uniformity, as can the State.

¶21 Section 46-18-904(3), MCA, provides that "[t]he sentence imposed by the district court is presumed correct." Thus, after hearing evidence and argument, the Division must decide whether this presumption has been overcome and a new sentence should be imposed, "including a decrease or increase in the penalty." Section 46-18-904(1)(a)(ii), MCA. The Division does so by determining, after its broad review, whether the original sentence was "clearly inadequate or excessive" under Rule 17. Although Petitioners criticize this standard, they conceded during argument that Rule 17 is not inconsistent with the statutes governing the Division, and we cannot conclude otherwise. Further, we cannot conclude that the Rule exceeds the Division's authority. Simple "equity" cannot serve as the standard of review, as the Legislature did not intend for the Division to engage in de novo sentencing. Indeed, we have held that the Division "under Montana's procedure may not substitute its discretion for the district court's. Instead, the sentence imposed by the district court is presumed correct . . . ." *Ranta*, ¶ 23 (citing § 46-18-904(3), MCA, and Rule 17, Mont. Sent. Rev. Div.). Further, the Division's interpretation of applicable governing statutes "is entitled to deference and respect because the Division is charged by the legislature with the administration of Montana's sentence review statutes." *Holt*, ¶ 10 (citing *State v. Midland Materials Co.*, 204 Mont. 65, 70, 662 P.2d 1322, 1325 (1983)). Therefore, we conclude Rule 17 is a valid application of the Division's statutory duty.

9

¶22 This analysis of the Division's standard of review undermines the statement in the Division's order to the effect that sentences would be considered unjust or inequitable "if they are so greatly disproportionate to the crime as to constitute cruel and unusual punishment," citing *Jones*. In *Jones*, we merely mentioned the Division's determination to leave Jones's sentence unchanged as one reason we were rejecting Jones's cruel and unusual punishment claim. *Jones*, 176 Mont. at 420, 578 P.2d at 1154-55. We were not indicating that the scope of the Division's review was limited to sentences which were cruel and unusual, as that is certainly incorrect. To that extent, then, the Division's order is reversed.

¶23 Accordingly, we accept supervisory control in this matter, and correct the Division's order as stated herein.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS


Justice James C. Nelson, dissenting.

¶24 I cannot understand what it is that the Court is holding in its Opinion. I do not agree that the "clearly inadequate or excessive" standard used by the Sentence Review Division (SRD) complies with the criteria that we appear nominally to mandate in

10

today's Opinion for sentence review. And I am not satisfied, in any event, that any standard which either this Court or SRD adopts makes any sense in the absence of a readily accessible database of statewide sentencing statistics.

¶25 To begin with, it is not clear what standard, exactly, we are adopting for sentence review. On one hand, the Court reverses SRD's order that sentences would be considered unjust or inequitable "if they are so greatly disproportionate to the crime as to constitute cruel and unusual punishment." *See* Opinion, ¶ 22. I agree with the Court's decision in this regard and with the limitation the Court places on the language of *In re Jones*, 176 Mont. 412, 578 P.2d 1150 (1978), from which SRD adopted this standard. Opinion, ¶ 22. Furthermore, I do not take issue with the Court's statements in ¶ 17 regarding the broad authority and discretion granted by statute to district courts in sentencing matters.[1] Nor do I disagree that SRD was created to serve as a "safety net" against "unjust" and "inequitable" sentences imposed upon individual offenders for particular offenses. Opinion, ¶ 18. Finally, I agree that SRD's review "is not cabined by rigid guidelines" and that SRD must consider a defendant's petition for sentence review on "equitable grounds" such as "fairness, consistency and uniformity." Opinion, ¶ 20.

---

[1] Notwithstanding, however, that this Court seems to be increasingly content—or perhaps determined—to chip away at this broad sentencing discretion by turning some sentencing decisions over to the correctional system's bureaucracy. *See e.g. State v. Hernandez*, 2009 MT 341, 353 Mont. 111, 220 P.3d 25 (upholding the imposition of the Department of Corrections' "standard conditions of probation" irrespective of the nexus requirement this Court articulated in *State v. Ashby*, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164, and reaffirmed in *State v. Stiles*, 2008 MT 390, 347 Mont. 95, 197 P.3d 966).

11

¶26 Yet, on the other hand, and in the face of having said all of the foregoing, the Court summarily concludes that since the sentence imposed by the district court is presumed correct, SRD's "clearly inadequate or excessive" standard is "a valid application of [SRD's] statutory duty" to review petitions for sentence review. Opinion, ¶ 21. I do not agree that the rigid "clearly inadequate or excessive" standard incorporates the notions of "fairness" and "equity" that the Court appears nominally to mandate earlier in its Opinion, as noted above. Thus, in holding as it does, the Court implicitly overrules (unfortunately, without citation to the many cases affected, *see* ¶ 34 & n. 2, *infra*) our well-established and extensive caselaw that, until today, required SRD to review sentences for "equity."

¶27 So, where does that leave the law? Apparently the "primary objective" of SRD is to ensure "uniformity in sentencing." Opinion, ¶ 19. But SRD may also (as the State acknowledges) "take into account 'equity issues' and 'considerations of justice,' " Opinion, ¶¶ 16, 20, including "fairness" and "consistency," Opinion, ¶ 20. Yet, under SRD's "clearly inadequate or excessive" standard, this "primary objective" cannot be achieved through review for simple "equity," Opinion, ¶ 21, even though SRD may consider equity issues, Opinion, ¶¶ 16, 20.

¶28 There are two problems here. First, the parties, and now this Court, casually throw out terms and phrases without regard to what they actually mean. Second, as noted, this case convinces me that no entity in the criminal justice system has any way of actually

determining whether sentences handed down by the district courts are "uniform," much less consistent, equitable, fair, just, or proportionate.

¶29   With respect to terminology, "*uniformity* in sentencing" contemplates that sentences will be characterized by a lack of variation; that they will be identical or consistent. *See Black's Law Dictionary* 1668 (Bryan A. Garner ed., 9th ed., West 2009). However, as noted, both the State and this Court qualify this exacting standard with the requirement that sentencing courts take into account "*equity* issues." Equity broadly contemplates fairness, impartiality, and evenhandedness. *See Black's Law Dictionary* 619. Moreover, both the State and this Court further qualify the uniformity standard by requiring sentencing courts to take into account "considerations of *justice*." That which is just is legally right, lawful, and equitable. *See Black's Law Dictionary* 942. Finally, even SRD acknowledges that it has an obligation to reduce disparities in the sentencing of prisoners. Disparity means inequality, i.e., "a difference in quantity or quality between two or more things." *Black's Law Dictionary* 538. Thus, using the terminology the Court adopts, it appears that the "primary objective" of SRD is, at one and the same time, to review sentences for a lack of variation; for fairness, impartiality, and evenhandedness; for legality and equity; and for differences in quantity and quality as compared with other sentences imposed.

¶30   Yet, SRD's Rule 17 states that a sentence will be reviewed to determine whether it is "clearly inadequate or excessive." "Clear" means "[f]ree from doubt; sure." *Black's Law Dictionary* 287. "Inadequate" means "insufficient." *Merriam-Webster's Collegiate*

13

*Dictionary* 586 (10th ed., Merriam-Webster 1997). "Excessive" means "going beyond a normal limit." *Merriam-Webster's Collegiate Dictionary* 404. Thus, under Rule 17, SRD reviews a sentence to determine whether the sentence, without doubt, is insufficient or goes beyond the normal limit.

¶31 In my view, SRD's power of "broad review," Opinion, ¶ 21, applying the nuanced terminology that this Court has adopted, cannot be squared with or accomplished under the "clearly inadequate or excessive" standard. "Clearly inadequate or excessive" contemplates that a much wider range of sentences will be found appropriate than under an "equity" and "fairness" standard. Indeed, any *lawful* sentence (i.e., one that falls within the parameters set by statute, *see State v. Grana*, 2009 MT 250, ¶ 11, 351 Mont. 499, 213 P.3d 783) would pass muster. But a sentence certainly can be non-uniform, inconsistent, unfair, and inequitable without being "clearly inadequate or excessive." In sum, while the Court nominally imposes a broad standard of sentence review, it then allows SRD to apply another standard that is much narrower and more constrained.

¶32 More to the point, while § 46-18-901(4), MCA, allows SRD to adopt rules that will "expedite its review of sentences," no provision of Title 46, chapter 18, part 9, MCA, suggests or permits the "clearly inadequate or excessive" standard adopted by SRD. Indeed, SRD functions as an arm of this Court, § 46-18-901(1), MCA; *Ranta v. State*, 1998 MT 95, ¶ 27, 288 Mont. 391, 958 P.2d 670, and this Court has required SRD to review sentences "on equitable grounds," *Ranta*, ¶ 27; *State v. Triplett*, 2008 MT 360, ¶ 27, 346 Mont. 383, 195 P.3d 819. But yet now we require SRD to somehow conduct

14

that review for equity, Opinion, ¶ 20, without actually reviewing for simple equity, Opinion, ¶ 21.

¶33    Indeed, the Court's Opinion is internally inconsistent on this point and, ultimately, will only engender confusion regarding the appropriate standard that SRD is to apply. First, as noted, the Court tells us that SRD "was created to review sentences challenged as being unjust or inequitable," Opinion, ¶ 18, and that SRD "may take into account 'equity issues,'" Opinion, ¶ 16.  Indeed, the Court reaffirms that SRD "review[s] 'for equity,'" Opinion, ¶ 20 (quoting *State v. Stephens*, 198 Mont. 140, 145, 645 P.2d 387, 390 (1982)), and that a defendant "can rightly appeal to [SRD's] judges on equitable grounds," Opinion, ¶ 20.  But then the Court inexplicably follows all of this with its holding in ¶ 21 that "[s]imple 'equity' cannot serve as the standard of review." Obviously, "equity" cannot simultaneously be both part of the calculus and not part of the calculus—except, perhaps, in the world of quantum physics, *cf. Denke v. Shoemaker*, 2008 MT 418, ¶ 78 & n. 2, 347 Mont. 322, 198 P.3d 284.

¶34    This Court has stated repeatedly that we will not review a criminal sentence for equity because that is the responsibility of SRD.[2]  Thus, to the extent the Court really

_____

[2] The cases standing for this proposition date back at least as far as the early 1980s and are too numerous to list in their entirety here.  The following relatively small sampling will suffice to illustrate the point:  *State v. Baker*, 2008 MT 396, ¶ 15, 347 Mont. 159, 197 P.3d 1001 ("Baker's contentions that the terms of incarceration violate statutory sentencing policies are equity issues, review of which lies with the Sentence Review Division, not this Court."); *State v. Duncan*, 2008 MT 148, ¶ 50, 343 Mont. 220, 183 P.3d 111 ("Where, as here, an offender is sentenced to more than one year in prison, we review that sentence for legality only.  In such cases, any challenges to the equity of the sentence must be brought before the Sentence Review Division." (citation omitted));

means what it says in ¶ 21 (i.e., that "[s]imple 'equity' cannot serve as the standard of review"), which in turn means that the myriad cases which hold that SRD reviews sentences "for equity" are no longer good law, then two possibilities follow: first, no one reviews sentences for equity after today's decision; or second, this Court now must review sentences for equity. The only reason we have not been doing so is because we

---

*State v. Shults*, 2006 MT 100, ¶ 32, 332 Mont. 130, 136 P.3d 507 ("[S]ince Shults's sentence is within statutory parameters, his equity argument is not properly before this Court. Although we will not review the equity of Shults's sentence, he is not precluded from petitioning for sentence review." (citation omitted)); *State v. Wardell*, 2005 MT 252, ¶ 29, 329 Mont. 9, 122 P.3d 443 ("Although we will not review the equity of Wardell's sentence he may petition for sentence review."); *State v. Legg*, 2004 MT 26, ¶ 53, 319 Mont. 362, 84 P.3d 648 ("The State responds, and we agree, that this is an issue concerning the equity of Legg's sentence, which properly lies with the Sentence Review Division."); *Vernon Kills On Top v. State*, 2000 MT 340, ¶ 74, 303 Mont. 164, 15 P.3d 422 ("To the extent Petitioner's complaints relate to the equity of his sentence, those complaints are properly addressed to the Sentence Review Division of this Court."); *State v. Montoya*, 1999 MT 180, ¶ 14, 295 Mont. 288, 983 P.2d 937 ("[A] challenge to the 'equitability' of a sentence falls under the authority of the Sentence Review Division . . . ."); *State v. Gordon*, 1999 MT 169, ¶ 54, 295 Mont. 183, 983 P.2d 377 ("To the extent Gordon's complaints relate to the equity of his sentence, those complaints are properly addressed to the Sentence Review Division of this Court."); *State v. Baisch*, 1998 MT 12, ¶ 15, 287 Mont. 191, 953 P.2d 1070 ("We will not review sentences for mere inequity or disparity; that task is left to the Sentence Review Division."); *State v. Romannose*, 281 Mont. 84, 94, 931 P.2d 1304, 1311 (1997) ("To the extent that Martin's complaints concern the equity of his sentence, those must be addressed to the Sentence Review Division."); *State v. Moorman*, 279 Mont. 330, 337, 928 P.2d 145, 149 (1996) ("[T]he Sentence Review Division reviews the equity of a sentence."); *State v. Ford*, 278 Mont. 353, 363, 926 P.2d 245, 251 (1996) ("We will not review a sentence for mere inequity; the proper forum for a review of that nature is the Sentence Review Division."); *State v. DeSalvo*, 273 Mont. 343, 350, 903 P.2d 202, 207 (1995) ("[T]he proper channel for a challenge to the equity of a sentence as opposed to its legality is through the Sentence Review Division. We have consistently held that we will not review a sentence on appeal for mere inequity or disparity." (internal quotation marks and citation omitted)).

16

assumed that SRD was reviewing for equity. In *State v. Herd*, 2004 MT 85, ¶ 22, 320 Mont. 490, 87 P.3d 1017, we explained:

> Henceforth, if an offender is eligible for Sentence Review—in other words, if the offender is sentenced to one year or more of actual incarceration—this Court will . . . review such a sentence for legality only. It will be left in these cases to SRD to review sentences for equity. However, if an offender is statutorily ineligible for SRD, then this Court will utilize the two-tiered approach which we employed prior to the creation of SRD. Upon request, we will review such sentences for both legality *and* abuse of discretion.

Under this logic, it follows that because SRD no longer reviews sentences for equity, as the Court apparently holds in ¶ 21, that task will now fall back on us. *See also Ranta v. State*, 1998 MT 95, ¶ 27, 288 Mont. 391, 958 P.2d 670 ("Were the legislature to abolish [SRD], the function of reviewing sentences on equitable grounds would thus simply return to this Court.").

¶35    In sum, if SRD actually has the broad power of review the Court says it has, Opinion, ¶ 20, then this power cannot be fully exercised through a standard that limits the question before SRD to whether the sentence is "clearly inadequate or excessive." But if SRD is in fact to be so limited in its review, such that "[s]imple 'equity' cannot serve as the standard of review," Opinion, ¶ 21, then the following new procedures will have to be observed: this Court will review a sentence for legality and equity, *see Herd*, ¶ 22; *Ranta*, ¶ 27, and SRD will perform its limited review to determine if the sentence is "clearly inadequate or excessive." Correspondingly, our "review for equity" cases have evidently been overruled.

17

¶36 That being said, even assuming (for the sake of argument) that the components of the Court's Opinion and SRD's Rule 17 could be reconciled in some sensible and practical way, this entire discussion is largely academic in any event. As stated above, SRD functions as "an arm of this Court." *Ranta*, ¶ 27. Yet, this Court does not monitor SRD's decisions to ensure that it is achieving its "primary objective"—however that is now characterized. There is no right to appeal SRD's decisions to this Court. *See* § 46-18-905(1), MCA. Thus, if SRD is truly "an arm of this Court," then surely the left hand has no idea what the right hand is routinely doing.

¶37 The problem is that the district courts, this Court, and SRD are not provided with statewide sentencing statistics that would allow a reasoned analysis and determination of (a) the "uniformity in sentencing" of criminal defendants in this state, and whether such sentences are consistent, equitable, fair, just, and proportionate, and (b) whether SRD is achieving its "primary objective"—again, however that is characterized. Even assuming that these statistics could be piecemealed together from various sources, all parties concede that this sort of statistical data is not accessible in any comprehensive, readily available, or easily usable form. These sorts of data and statistics are not routinely supplied in report form to the district courts, to this Court, or to SRD.

¶38 Accordingly, I am at a loss to understand how uniformity or equity in sentencing can be achieved. Both uniformity and equity presuppose the ability to make informed comparisons across the spectrum of data for which consistency, fairness, and evenhandedness are sought. Neither the district courts nor this Court nor SRD can

18

presently make those sorts of informed comparisons. Uniformity and equity, as well as inadequacy and excessiveness, beg the question: "Compared to what?" Without the ability to make informed comparisons using a reliable spectrum of statistics and data, these standards produce little more than wholly subjective, ad hoc determinations.

¶39 Whether sentences are to be reviewed for "uniformity," taking into account "equity issues" and "considerations of justice," with the goal of reducing "disparities in prisoner sentencing," or are to be reviewed for "clear inadequacy or excessiveness," and if the district courts are expected to sentence with these requirements in mind, then a readily accessible database should be created to provide statistical information on a statewide basis for sentences handed down for various crimes and offenders. This information should routinely be made available in report form to the district courts, to this Court, and to SRD. Hopefully, this Court, the Attorney General, the Department of Corrections—or all three—will pursue funding and legislative authority for the creation of such a capability in the next legislative session.

¶40 In the meantime, I would grant the Appellate Defender's Petition for Writ of Supervisory Control and order SRD to amend its Rule 17 to provide, consistent with our caselaw and the purposes of SRD, that it will review sentences for "uniformity," Opinion, ¶ 19, taking into account "equity issues," "considerations of justice," "fairness," and "consistency," Opinion, ¶¶ 16, 20. I dissent from the Court's failure to do so.

/S/ JAMES C. NELSON

19