JUSTICE NELSON,
dissenting.
¶24 I cannot understand what it is that the Court is holding in its Opinion. I do not agree that the “clearly inadequate or excessive” *280 standard used by the Sentence Review Division (SRD) complies with the criteria that we appear nominally to mandate in today’s Opinion for sentence review. And I am not satisfied, in any event, that any standard which either this Court or SRD adopts makes any sense in the absence of a readily accessible database of statewide sentencing statistics.
¶25 To begin with, it is not clear what standard, exactly, we are adopting for sentence review. On one hand, the Court reverses SRD’s order that sentences would be considered unjust or inequitable “if they are so greatly disproportionate to the crime as to constitute cruel and unusual punishment.” See Opinion, ¶ 22. I agree with the Court’s decision in this regard and with the limitation the Court places on the language of In re Jones, 176 Mont. 412, 578 P.2d 1150 (1978), from which SRD adopted this standard. Opinion, ¶ 22. Furthermore, I do not take issue with the Court’s statements in ¶ 17 regarding the broad authority and discretion granted by statute to district courts in sentencing matters.[1] Nor do I disagree that SRD was created to serve as a “safety net” against “unjust” and “inequitable” sentences imposed upon individual offenders for particular offenses. Opinion, ¶ 18. Finally, I agree that SRD’s review “is not cabined by rigid guidelines” and that SRD must consider a defendant’s petition for sentence review on “equitable grounds” such as “fairness, consistency and uniformity.” Opinion, ¶ 20.
¶26 Yet, on the other hand, and in the face of having said all of the foregoing, the Court summarily concludes that since the sentence imposed by the district court is presumed correct, SRD’s “clearly inadequate or excessive” standard is “a valid application of [SRD’s] statutory duty” to review petitions for sentence review. Opinion, ¶ 21. I do not agree that the rigid “clearly inadequate or excessive” standard incorporates the notions of “fairness” and “equity” that the Court appears nominally to mandate earlier in its Opinion, as noted above. Thus, in holding as it does, the Court implicitly overrules (unfortunately, without citation to the many cases affected, see ¶ 34 & n. 2, infra) our well-established and extensive caselaw that, until *281 today, required SRD to review sentences for “equity.”
¶27 So, where does that leave the law? Apparently the “primary objective” of SRD is to ensure “uniformity in sentencing.” Opinion, ¶ 19. But SRD may also (as the State acknowledges) “take into account ‘equity issues’ and ‘considerations of justice,’ ” Opinion, ¶¶ 16, 20, including “fairness” and “consistency,” Opinion, ¶ 20. Yet, under SRD’s “clearly inadequate or excessive” standard, this “primary objective” cannot be achieved through review for simple “equity,” Opinion, ¶ 21, even though SRD may consider equity issues, Opinion, ¶¶ 16, 20.
¶28 There are two problems here. First, the parties, and now this Court, casually throw out terms and phrases without regard to what they actually mean. Second, as noted, this case convinces me that no entity in the criminal justice system has any way of actually determining whether sentences handed down by the district courts are “uniform,” much less consistent, equitable, fair, just, or proportionate.
¶29 With respect to terminology, “uniformity in sentencing” contemplates that sentences will be characterized by a lack of variation; that they will be identical or consistent. See Black’s Law Dictionary 1668 (Bryan A. Garner ed., 9th ed., West 2009). However, as noted, both the State and this Court qualify this exacting standard with the requirement that sentencing courts take into account “equity issues.” Equity broadly contemplates fairness, impartiality, and evenhandedness. See Black’s Law Dictionary 619. Moreover, both the State and this Court further qualify the uniformity standard by requiring sentencing courts to take into account “considerations of justice.” That which is just is legally right, lawful, and equitable. See Black’s Law Dictionary 942. Finally, even SRD acknowledges that it has an obligation to reduce disparities in the sentencing of prisoners. Disparity means inequality, i.e., “a difference in quantity or quality between two or more things.” Black’s Law Dictionary 538. Thus, using the terminology the Court adopts, it appears that the “primary objective” of SRD is, at one and the same time, to review sentences for a lack of variation; for fairness, impartiality, and evenhandedness; for legality and equity; and for differences in quantity and quality as compared with other sentences imposed.
¶30 Yet, SRD’s Rule 17 states that a sentence will be reviewed to determine whether it is “clearly inadequate or excessive.” “Clear” means “[f]ree from doubt; sure.” Black’s Law Dictionary 287. “Inadequate” means “insufficient.” Merriam-Webster’s Collegiate Dictionary 586 (10th ed., Merriam-Webster 1997). “Excessive” means “going beyond a normal limit.” Merriam-Webster’s Collegiate *282 Dictionary 404. Thus, under Rule 17, SRD reviews a sentence to determine whether the sentence, without doubt, is insufficient or goes beyond the normal limit.
¶31 In my view, SRD’s power of “broad review,” Opinion, ¶ 21, applying the nuanced terminology that this Court has adopted, cannot be squared with or accomplished under the “clearly inadequate or excessive” standard. “Clearly inadequate or excessive” contemplates that a much wider range of sentences will be found appropriate than under an “equity” and “fairness” standard. Indeed, any lawful sentence (i.e., one that falls within the parameters set by statute, see State v. Grana, 2009 MT 250, ¶ 11, 351 Mont. 499, 213 P.3d 783) would pass muster. But a sentence certainly can be non-uniform, inconsistent, unfair, and inequitable without being “clearly inadequate or excessive.” In sum, while the Court nominally imposes a broad standard of sentence review, it then allows SRD to apply another standard that is much narrower and more constrained.
¶32 More to the point, while § 46-18-901(4), MCA, allows SRD to adopt rules that will “expedite its review of sentences,” no provision of Title 46, chapter 18, part 9, MCA, suggests or permits the “clearly inadequate or excessive” standard adopted by SRD. Indeed, SRD functions as an arm of this Court, § 46-18-901(1), MCA; Ranta v. State, 1998 MT 95, ¶ 27, 288 Mont. 391, 958 P.2d 670, and this Court has required SRD to review sentences “on equitable grounds,” Ranta, ¶ 27; State v. Triplett, 2008 MT 360, ¶ 27, 346 Mont. 383, 195 P.3d 819. But yet now we require SRD to somehow conduct that review for equity, Opinion, ¶ 20, without actually reviewing for simple equity, Opinion, ¶ 21.
¶33 Indeed, the Court’s Opinion is internally inconsistent on this point and, ultimately, will only engender confusion regarding the appropriate standard that SRD is to apply. First, as noted, the Court tells us that SRD “was created to review sentences challenged as being unjust or inequitable,” Opinion, ¶ 18, and that SRD “may take into account ‘equity issues,’ ” Opinion, ¶ 16. Indeed, the Court reaffirms that SRD “review[s] ‘for equity,’ ” Opinion, ¶ 20 (quoting State v. Stephens, 198 Mont. 140, 145, 645 P.2d 387, 390 (1982)), and that a defendant “can rightly appeal to [SRD’s] judges on equitable grounds,” Opinion, ¶ 20. But then the Court inexplicably follows all of this with its holding in ¶ 21 that “[s]imple ‘equity cannot serve as the standard of review.” Obviously, “equity” cannot simultaneously be both part of the calculus and not part of the calculus-except, perhaps, in the world of quantum physics, cf. Denke v. Shoemaker, 2008 MT 418, ¶ 78 & n. 2, *283 347 Mont. 322, 198 P.3d 284.
¶34 This Court has stated repeatedly that we will not review a criminal sentence for equity because that is the responsibility of SRD.[2] Thus, to the extent the Court really means what it says in ¶ 21 (i.e., that “[s]imple ‘equity’ cannot serve as the standard of review”), which in turn means that the myriad cases which hold that SRD reviews sentences “for equity” are no longer good law, then two possibilities follow: first, no one reviews sentences for equity after today’s decision; or second, this Court now must review sentences for equity. The only reason we have not been doing so is because we assumed that SRD was reviewing for equity. In State v. Herd, 2004 MT 85, ¶ 22, 320 Mont. 490, 87 P.3d 1017, we explained:
Henceforth, if an offender is eligible for Sentence Review-in other words, if the offender is sentenced to one year or more of actual *284 incarceration-this Court will... review such a sentence for legality only. It will be left in these cases to SRD to review sentences for equity. However, if an offender is statutorily ineligible for SRD, then this Court will utilize the two-tiered approach which we employed prior to the creation of SRD. Upon request, we will review such sentences for both legality and abuse of discretion.
Under this logic, it follows that because SRD no longer reviews sentences for equity, as the Court apparently holds in ¶ 21, that task will now fall back on us. See also Ranta v. State, 1998 MT 95, ¶ 27,288 Mont. 391, 958 P.2d 670 (“Were the legislature to abolish [SRD], the function of reviewing sentences on equitable grounds would thus simply return to this Court.”).
¶35 In sum, if SRD actually has the broad power of review the Court says it has, Opinion, ¶ 20, then this power cannot be fully exercised through a standard that limits the question before SRD to whether the sentence is “clearly inadequate or excessive.” But if SRD is in fact to be so limited in its review, such that “[s]imple ‘equity’ cannot serve as the standard of review,” Opinion, ¶ 21, then the following new procedures will have to be observed: this Court will review a sentence for legality and equity, see Herd, ¶ 22; Ranta, ¶ 27, and SRD will perform its limited review to determine if the sentence is “clearly inadequate or excessive.” Correspondingly, our “review for equity” cases have evidently been overruled.
¶36 That being said, even assuming (for the sake of argument) that the components of the Court’s Opinion and SRD’s Rule 17 could be reconciled in some sensible and practical way, this entire discussion is largely academic in any event. As stated above, SRD functions as “an arm of this Court.” Ranta, ¶ 27. Yet, this Court does not monitor SRD’s decisions to ensure that it is achieving its “primary objective’-however that is now characterized. There is no right to appeal SRD’s decisions to this Court. See § 46-18-905(1), MCA. Thus, if SRD is truly “an arm of this Court,” then surely the left hand has no idea what the right hand is routinely doing.
¶37 The problem is that the district courts, this Court, and SRD are not provided with statewide sentencing statistics that would allow a reasoned analysis and determination of (a) the “uniformity in sentencing” of criminal defendants in this state, and whether such sentences are consistent, equitable, fair, just, and proportionate, and (b) whether SRD is achieving its “primary objective”-again, however that is characterized. Even assuming that these statistics could be piecemealed together from various sources, all parties concede that *285 this sort of statistical data is not accessible in any comprehensive, readily available, or easily usable form. These sorts of data and statistics are not routinely supplied in report form to the district courts, to this Court, or to SRD.
¶38 Accordingly, I am at a loss to understand how uniformity or equity in sentencing can be achieved. Both uniformity and equity presuppose the ability to make informed comparisons across the spectrum of data for which consistency, fairness, and evenhandedness are sought. Neither the district courts nor this Court nor SRD can presently make those sorts of informed comparisons. Uniformity and equity, as well as inadequacy and excessiveness, beg the question: “Compared to what?” Without the ability to make informed comparisons using a reliable spectrum of statistics and data, these standards produce little more than wholly subjective, ad hoc determinations.
¶39 Whether sentences are to be reviewed for “uniformity,” taking into account “equity issues” and “considerations of justice,” with the goal of reducing “disparities in prisoner sentencing,” or are to be reviewed for “clear inadequacy or excessiveness,” and if the district courts are expected to sentence with these requirements in mind, then a readily accessible database should be created to provide statistical information on a statewide basis for sentences handed down for various crimes and offenders. This information should routinely be made available in report form to the district courts, to this Court, and to SRD. Hopefully, this Court, the Attorney General, the Department of Corrections-or all three-will pursue funding and legislative authority for the creation of such a capability in the next legislative session.
¶40 In the meantime, I would grant the Appellate Defender’s Petition for Writ of Supervisory Control and order SRD to amend its Rule 17 to provide, consistent with our caselaw and the purposes of SRD, that it will review sentences for “uniformity,” Opinion, ¶ 19, taking into account “equity issues,” “considerations of justice,” “fairness,” and “consistency,” Opinion, ¶¶ 16, 20.1 dissent from the Court’s failure to do so.

 Notwithstanding, however, that this Court seems to be increasingly content-or perhaps determined-to chip away at this broad sentencing discretion by turning some sentencing decisions over to the correctional system’s bureaucracy. See e.g. State v. Hernandez, 2009 MT 341, 353 Mont. 111, 220 P.3d 25 (upholding the imposition of the Department of Corrections’ “standard conditions of probation” irrespective of the nexus requirement this Court articulated in State v. Ashby, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164, and reaffirmed in State v. Stiles, 2008 MT 390, 347 Mont. 95, 197 P.3d 966).

 The cases standing for this proposition date back at least as far as the early 1980s and are too numerous to list in their entirety here. The following relatively small sampling will suffice to illustrate the point: State v. Baker, 2008 MT 396, ¶ 15, 347 Mont. 159, 197 P.3d 1001 (“Baker’s contentions that the terms of incarceration violate statutory sentencing policies are equity issues, review of which lies with the Sentence Review Division, not this Court.”); State v. Duncan, 2008 MT 148, ¶ 50, 343 Mont. 220, 183 P.3d 111 (“Where, as here, an offender is sentenced to more than one year in prison, we review that sentence for legality only. In such cases, any challenges to the equity of the sentence must be brought before the Sentence Review Division.” (citation omitted)); State v. Shults, 2006 MT 100, ¶ 32, 332 Mont. 130, 136 P.3d 507 (“[S]ince Shults’s sentence is within statutory parameters, his equity argument is not properly before this Court. Although we will not review the equity of Shults’s sentence, he is not precluded from petitioning for sentence review.” (citation omitted)); State v. Wardell, 2005 MT 252, ¶ 29, 329 Mont. 9, 122 P.3d 443 (“Although we will not review the equity of Wardell’s sentence he may petition for sentence review.”); State v. Legg, 2004 MT 26, ¶ 53, 319 Mont. 362, 84 P.3d 648 (“The State responds, and we agree, that this is an issue concerning the equity of Legg’s sentence, which properly lies with the Sentence Review Division.”); Vernon Kills On Top v. State, 2000 MT 340, ¶ 74, 303 Mont. 164, 15 P.3d 422 (“To the extent Petitioner’s complaints relate to the equity of his sentence, those complaints are properly addressed to the Sentence Review Division of this Court.”); State v. Montoya, 1999 MT 180, ¶ 14, 295 Mont. 288, 983 P.2d 937 (“[A] challenge to the ‘equitability’ of a sentence falls under the authority of the Sentence Review Division....”); State v. Gordon, 1999 MT 169, ¶ 54, 295 Mont. 183, 983 P.2d 377 (“To the extent Gordon’s complaints relate to the equity of his sentence, those complaints are properly addressed to the Sentence Review Division of this Court.”); State v. Baisch, 1998 MT 12, ¶ 15, 287 Mont. 191, 953 P.2d 1070 (“We will not review sentences for mere inequity or disparity; that task is left to the Sentence Review Division.”); State v. Romannose, 281 Mont. 84, 94, 931 P.2d 1304, 1311 (1997) (“To the extent that Martin’s complaints concern the equity of his sentence, those must be addressed to the Sentence Review Division.”); State v. Moorman, 279 Mont. 330, 337, 928 P.2d 145, 149 (1996) (“[T]he Sentence Review Division reviews the equity of a sentence.”); State v. Ford, 278 Mont. 353, 363, 926 P.2d 245, 251 (1996) (“We will not review a sentence for mere inequity; the proper forum for a review of that nature is the Sentence Review Division.”); State v. DeSalvo, 273 Mont. 343, 350, 903 P.2d 202, 207 (1995) (“[T]he proper channel for a challenge to the equity of a sentence as opposed to its legality is through the Sentence Review Division. We have consistently held that we will not review a sentence on appeal for mere inequity or disparity.” (internal quotation marks and citation omitted)).